**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXIS REINSURANCE COMPANY, | ) Case No. 12-2979 SC |
| | ) |
| Plaintiff, | ) ORDER GRANTING IN PART AND |
| | ) DENYING IN PART MOTION FOR |
| v. | ) PARTIAL SUMMARY JUDGMENT |
| | ) |
| TELEKENEX, INC.; ANTHONY ZABIT; | ) |
| KAREN SALAZAR; BRANDON CHANEY; | ) |
| DEANNA CHANEY; MARK PRUDELL; JOY | ) |
| PRUDELL; MARK RADFORD; NIKKI | ) |
| RADFORD; JOSHUA SUMMERS; JULIA | ) |
| SUMMERS; IXC HOLDINGS, INC.; | ) |
| STRAITSHOT COMMUNICATIONS, INC.; | ) |
| and STRAITSHOT RC, LLC, | ) |
| | ) |
| Defendants. | ) |

## I. **INTRODUCTION**

Axis Reinsurance Company ("Axis") brings this action against
Telekenex, Inc. ("Telekenex"), Anthony Zabit, Karen Salazar,
Brandon Chaney, Deanna Chaney, IXC Holdings, Inc. ("IXCH"),
(collectively, the "Telekenex Defendants"), Straitshot
Communications, Inc., and Straitshot RC, LLC (collectively,
"Straitshot").  Axis seeks a judicial declaration that the
insurance policy it issued to Telekenex (the "Policy") does not
cover any amounts awarded in an underlying action captioned

United States District Court
For the Northern District of California

1  <u>Straitshot Communications, Inc. v. Telekenex, Inc., et al.</u>, No.

2  C10-268 TSZ (W.D. Wash) (the "<u>Straitshot</u> action").   ECF No. 15

3  ("Am. Compl.").   Axis now moves for partial summary judgment

4  against all defendants on three of its five causes of action

5  pursuant to Federal Rule of Civil Procedure 56.[1]   ECF No. 37

6  ("MSJ").   The Telekenex Defendants have opposed Axis's motion for

7  partial summary judgment, ECF No. 40 ("MSJ Opp'n"), but Straitshot

8  has not.   Axis has also filed a reply brief in support of its

9  motion.   ECF No. 46 ("MSJ Reply").   The Court finds this matter

10  appropriate for resolution without oral argument.   For the reasons

11  set forth below, the motion is GRANTED in part and DENIED in part.

12

13  **II.   <u>BACKGROUND</u>**

14      **A.   <u>The Policy</u>**

15      Sometime in 2008, Telekenex, a telecommunications provider,

16  applied for insurance coverage with Axis.   Smith Decl. ¶ 3; Odalen

17  Decl. Ex. 2 ("Ins. App.").[2]   The application indicates that

18  Telekenex operates out of San Francisco, California and that all of

---

[1] Axis has also sued Mark and Nikki Radford, Joshua and Julia
Summers, and Mark and Joy Prudell.   To the extent that Axis intends
to move for summary judgment against these defendants, and it
appears that it does, its motion is inappropriate.   The Clerk has
already entered default against the Summerses and the Radfords, ECF
No. 26, and the Prudells were not served until well after Axis
moved for summary judgment, <u>see</u> ECF Nos. 66, 67.   If Axis wishes
the Court to enter judgment against the Radfords and the Summerses,
then it should move for default judgment.   If it wishes for a
judgment against the Prudells, then it should provide them with
adequate time to respond.

[2] Ross Smith, Axis's attorney, and Matthew Odelen, a senior claims
specialist at Axis who handled Telekenex's claim, filed
declarations in support of Axis's motion for partial summary
judgment.   ECF No. 38 ("Smith Decl."); ECF No. 39 ("Odelen Decl.").
Mr. Chaney, one of the named Defendants, filed a declaration in
opposition to Axis's motion for partial summary judgment.   ECF No.
41 ("Chaney Decl.").

its 113 employees work in California.  Ins. App. at 2, 10.  Axis ultimately approved Telekenex's application and issued the Policy to Telekenex on May 27, 2008.  Odalen Decl. Ex. 1 ("Policy").  According to Mr. Odalen, who handled Axis's claims, the Policy was issued in San Francisco, California.  Id. ¶ 2.  The Policy includes several endorsements which amend the policy in a number of ways.  One of these endorsements, entitled "California Amendatory Endorsement," concerns the cancellation and nonrenewal of the Policy.  Policy at 10.

The Policy provides coverage for claims against directors and officers (a.k.a., "D&O liability"), employment practices liability, fiduciary liability, and outside executive liability, among other things.  Policy § I.  The Policy carves out a number of exclusions, including an "Unlawful Advantage Exclusion" for losses

> based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving: the gaining of any profit, remuneration, or advantage to which the Insured was not legally entitled . . . if evidenced by any judgment, final adjudication, alternate dispute resolution proceeding or a document or written statement by an Insured.

Id. § IV.A.5.

The Policy covers "Insured Individual[s]," who are defined as "natural persons" who are "duly elected or appointed director[s], officer[s], trustee[s] of Manager[s] of the Policyholder," as well as "individuals compensated by the Policyholder through wages, salary, and/or commission."  Id. § III.C.7.  The Policy also provides coverage for an insured's spouse where that spouse is sued solely by reason of his or her status as a spouse of the insured.  Id. § II.A.

**B.   The Straitshot Action**

In 2008, one of Telekenex's Washington-based competitors, Straitshot, sued Telekenex and the other Telekenex Defendants in the Western District of Washington.   Smith Decl. Ex. 3 ("Straitshot 5AC") ¶ 2.   Straitshot alleged that the Telekenex Defendants stole its trade secrets and confidential customer information and covered up this theft through the destruction of evidence.   Id. ¶ 1.   In addition to Telekenex, Straitshot sued Mr. Zabit, Telekenex's president, Mr. Chaney, Telekenex's Chief Executive Officer ("CEO"), and Messrs. Prudell, Radford, and Summers, former Straitshot employees who allegedly funneled business opportunities to Telekenex before resigning from Straitshot.   Am. Compl. ¶¶ 4-8; Straitshot 5AC.   Straitshot also sued the individual defendants' spouses, Mss. Chaney, Prudell, Radford, Salazar,[3] and Summers, on the ground that the other individual defendants' unlawful acts were taken on behalf of the marital community.   Straitshot 5AC.

Straitshot asserted fourteen causes of action.   Id. ¶¶ 325-415.   Among other things, Straitshot asserted that Messrs. Prudell, Radford, and Summers breached their employment contracts with and their duty of loyalty to Straitshot by divulging Straitshot's confidential and proprietary information to Telekenex; that all defendants interfered with Straitshot's contractual relations with its customers; and that a number of the defendants violated the Lanham Act, the Consumer Protection Act, the Washington Criminal Profiteering Act, and the federal RICO statute.   Id.

Sometime after the Straitshot action was filed, Telekenex tendered a claim to Axis under the Policy.   Odalen Decl. ¶ 3.

---

[3] Ms. Salazar is Mr. Zabit's wife.   Straitshot named her as Jane Doe Zabit.

United States District Court
For the Northern District of California

1  Telekenex indicated that it intended to assume the legal defense of

2  the claim using its own independent counsel.  Odalen Decl. ¶ 3, Ex.

3  4.  Axis responded to the claim in letters dated September 28, 2010

4  and October 4, 2010, where it indicated that a number of claims

5  asserted in the Straitshot action were not covered under the Policy

6  and that Axis reserved its rights to deny coverage for the matter.

7  See id. Ex. 3; Chaney Decl. Ex. B.  Sometime in or around the fall

8  of 2010, Telekenex informed Axis that its chosen defense counsel

9  had withdrawn pursuant to a court order because of a conflict of

10 interest.  Id. Ex. 4.  Axis agreed to accept the duty to defend and

11 retained the law firm of Littler Mendelson to defend the Straitshot

12 action.  Id.

13     The Staitshot action ultimately went to trial.  The jury

14 returned a $6.49 million verdict in favor of Straitshot, finding

15 for Straitshot on its claims for: (1) breach of contract against

16 Messrs. Prudell and Radford; (2) breach of the duty of loyalty

17 against Messrs. Prudell and Summers; (3) interference with

18 contractual relations against Telekenex and Messrs. Prudell,

19 Radford, Summers, Zabit, and Chaney; and (4) violation of the

20 Consumer Protection Act against Telekenex and Messrs. Zabit,

21 Chaney, Prudell, and Radford.  Smith Decl. Ex. 7 ("Straitshot

22 Verdict").  The jury found against Straitshot on its claims for

23 misappropriation of trade secrets and false statements in violation

24 of the Lanham Act.  Id.  The Court entered a judgment against all

25 defendants.  Smith Decl. Ex. 9 ("Straitshot Judgment").

26     Following the trial, the court issued Findings of Fact and

27 Conclusions of Law that rejected the defendants' affirmative

28 defenses of estoppel and unclean hands.  Smith Decl. Ex. 8

**United States District Court**
For the Northern District of California

("FFCL"). As part of its findings, the Court concluded that "Straitshot expressly authorized Telekenex, Summers, and other Telekenex network engineers to 'access its systems' in order to provide assistance to Straitshot customers," but "the Telekenex Defendants' conduct went well beyond what was authorized by Straitshot, including using its access to Straitshot's systems to encourage Straitshot customers to move to Telekenex." Id. ¶ 14. The Court issued additional Findings of Fact and Conclusions of Law awarding Straitshot sanctions for Mr. Summers's spoliation of evidence and failure to produce documents during discovery. Smith Decl. Ex. 10 ("Spoliation FFCL"). In connection with these findings, the Court concluded that Mr. Summers intentionally and wrongfully used a Straitshot laptop and, in bad faith, made substantial alterations and deletions to that laptop in violation of multiple temporary restraining orders. Id. ¶ 24. The Court also found that Straitshot was entitled to sanctions from Telekenex for the spoliation under the doctrine of respondeat superior. Id. ¶ 31.

### C. **The Instant Action**

On June 8, 2012, Axis filed the instant action against the Telekenex Defendants and Straitshot. ECF No. 1. In its Amended Complaint, Axis asserts eight causes of action, three of which are relevant to the instant motion. In Count I, Axis asserts that the amounts awarded in the Straitshot action are not covered under the Policy because they fall under the Policy's Unlawful Advantage Exclusion. In Count II, Axis asserts that California Insurance Code § 533 also bars recovery for the amounts awarded in the Straitshot action. In Count V, Axis asserts that IXCH is not

**United States District Court**
For the Northern District of California

1  entitled to coverage under the Policy.  Axis now moves for summary

2  judgment on Counts I, II, and V.

3

4  **III. LEGAL STANDARD**

5      Entry of summary judgment is proper "if the movant shows that

6  there is no genuine dispute as to any material fact and the movant

7  is entitled to judgment as a matter of law."  Fed. R. Civ. P.

8  56(a).  Summary judgment should be granted if the evidence would

9  require a directed verdict for the moving party.  Anderson v.

10  Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  "A moving party

11  without the ultimate burden of persuasion at trial -- usually, but

12  not always, a defendant -- has both the initial burden of

13  production and the ultimate burden of persuasion on a motion for

14  summary judgment."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz

15  Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to

16  carry its burden of production, the moving party must either

17  produce evidence negating an essential element of the nonmoving

18  party's claim or defense or show that the nonmoving party does not

19  have enough evidence of an essential element to carry its ultimate

20  burden of persuasion at trial."  Id.  "In order to carry its

21  ultimate burden of persuasion on the motion, the moving party must

22  persuade the court that there is no genuine issue of material

23  fact."  Id.

24  ///

25  ///

26  ///

27  ///

28  ///

**IV.  DISCUSSION**

  **A.   Unlawful Advantage Exclusion**

Axis moves for summary judgment on Count I on the ground that the Policy's Unlawful Advantage Exclusion bars coverage for losses arising out of the Straitshot action, specifically, the $6.49 million judgment and spoliation sanctions.  Before turning to the substantive law on this issue, the Court first addresses the parties' arguments concerning what law to apply.[4]

As Axis argues, California Civil Code section 1646 governs the choice-of-law analysis for disputes over contract interpretation such as this one.  See Frontier Oil Corp. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1454 (2007).  However, courts need not engage in a section 1646 choice-of-law analysis where there is no material conflict between the laws of the states involved.  See id. at 1453; Gitano Grp., Inc. v. Kemper Grp., 26 Cal. App. 4th 49, 57 (1994).  Such is the case here.  Under Washington law, "[a] court considers the [insurance] policy as a whole, and gives it a fair, reasonable, and sensible construction . . . .  If the policy language is clear and unambiguous, the court must enforce it as written and may not

---

[4] The parties rely, in part, on choice-of-law arguments raised in earlier briefing.  On September 5, 2012, the Telekenex Defendants moved to dismiss this action in favor of a parallel action pending in a Washington court.  ECF No. 21 ("MTD").  They argued that a Washington venue was more appropriate because, among other things, Washington law applied to the coverage dispute at issue.  Id. at 7. After Axis moved for partial summary judgment, the Telekenex Defendants requested that the Court defer consideration because the issues of venue, jurisdiction, and applicable law had not yet been resolved.  ECF No. 45.  On November 27, 2012, the Court denied both motions.  ECF No. 63.  The motion to dismiss was denied on the ground that the Washington action had since been dismissed in deference to the case pending before this Court.  Id. at 3.  The motion to defer was denied on the ground that courts "frequently settle[] choice-of-law issues during summary judgment proceedings, and the parties have briefed those issues here."  Id.

modify it or create ambiguity where none exists." Black v. Nat'l Merit Ins. Co., 154 Wash. App. 674, 679 (2010) (internal quotation marks omitted).  Likewise, California courts give the terms of an insurance policy "[their] ordinary and popular sense, unless used by the parties in a technical sense" and construe terms as ambiguous "only if [they are] susceptible to two or more reasonable constructions despite the plain meaning of [the] terms within the context of the policy as a whole." Palmer v. Truck Ins. Exch., 21 Cal. 4th 1109, 1115 (1999) (emphasis in original) (internal quotation marks omitted).  Additionally, both Washington and California courts construe ambiguities against the insurer, id.; Quadrant Corp. v. Am. States Ins. Co., 154 Wash. 2d 165, 172 (2005), and narrowly interpret exclusionary clauses, such as the one at issue here, Villa Los Alamos Homeowners Assn. v. State Farm Gen. Ins. Co., 198 Cal. App. 4th 522, 534 (2011); Phil Schroeder, Inc. v. Royal Globe Ins. Co., 99 Wash. 2d 65, 68 (1983). Accordingly, the Court need not and, therefore, does not reach the choice-of-law question here and applies California law.

      The Court now turns to the substantive dispute concerning the Unlawful Advantage Exclusion.  The exclusion bars recovery for losses arising from claims "based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving: the gaining of any profit, remuneration, or advantage to which the Insured was not legally entitled . . . if evidenced by any judgment [or] final adjudication . . . ."  Policy § IV.A.5. Axis argues that the exclusion applies here since the Telekenex Defendants' loss stems from their unlawful procurement of Straitshot's customers and confidential information.  MSJ at 16.

**United States District Court**
For the Northern District of California

1    Axis responds that the exclusion only applies where there is an

2    illegal profit evidenced by a judgment or final adjudication and

3    that, here, neither the jury's verdict, the court's judgment, nor

4    the court's spoliation award contains a determination that the

5    Telekenex Defendants gained any profit or advantage.  MSJ Opp'n at

6    7.

7        Axis primarily relies on the Fifth Circuit's decision in

8    Jarvis Christian College v. National Union Fire Insurance Co. of

9    Pittsburgh, 197 F.3d 742 (5th Cir. 1999).  MSJ at 16-17.  That case

10   dealt with a similarly worded policy exclusion, which precluded

11   insurance coverage for "any claim arising out of the gaining in

12   fact of any personal profit or advantage to which the Insured is

13   not legally entitled."  Jarvis, 197 F.3d at 747 (emphasis added).

14   The district court found that the exclusion applied where a member

15   of Jarvis's board had transferred $2 million of Jarvis's endowment

16   funds to a business that the board member owned.  Id.  On appeal,

17   Jarvis argued that the board member did not gain "in fact" a

18   personal profit or advantage from the transfer.  The Fifth Circuit

19   disagreed, finding that, as the owner of a third-party business,

20   the board member expected to personally make over $360,000 from the

21   fund transfer.  Id. at 748.  Further, even if the board member did

22   not gain a balance-sheet profit, "[he] did gain in fact a personal

23   advantage."  Id. (emphasis in original).  Based on Jarvis, Axis

24   argues that the Policy's Unlawful Advantage Exclusion should apply

25   here, reasoning that "the acts of the Telekenex [D]efendants

26   created the ultimate advantage in giving Telekenex an opportunity

27   to shift . . . Straitshot's entire customer base over to Telekenex

28   . . . .  And as owners, officers and/or employees, [the individual

10

1    defendants] all stood to personally gain and shared in the

2    advantage gained by Telekenex."  MSJ at 17.

3        The Telekenex Defendants respond that, under another Fifth

4    Circuit case, Tig Specialty Insurance Co. v. PinkMonkey.com, Inc.,

5    375 F.3d 365 (5th Cir. 2004), the Unlawful Advantage Exclusion only

6    applies where an illegal profit or advantage is evidenced by a

7    judgment or final adjudication.  MSJ Opp'n at 7-8.  Tig involved a

8    policy exclusion practically identical to the one at issue in

9    Jarvis, requiring a profit or advantage in fact.  Tig, 375 F.3d at

10   371.  The Court found that a statutory stock fraud conviction

11   triggered the exclusion because, in order to convict, the jury was

12   required to find that the defendant "benefited from [a] false

13   representation or promise" and "[b]enefit is synonymous with

14   advantage or profit."  Id. at 370  In contrast, the Telekenex

15   Defendants argue, the jury in the Straitshot action only found

16   against Telekenex and its officers on two causes of action,

17   interference with contractual relations and violation of

18   Washington's Consumer Protection Act, neither of which require a

19   finding of profit or advantage.  MSJ Opp'n at 9.

20       The Telekenex Defendants also cite to this Court's opinion in

21   PMI Mortgage Insurance Co. v. American International Specialty

22   Lines Insurance Co., No. C. 02-1774 PJH, 2006 WL 825266 (N.D. Cal.

23   Mar. 29, 2006), for the same proposition.  The exclusion at issue

24   in PMI, like the exclusions in Jarvis and Tig, required a showing

25   of profit or advantage "in fact."  PMI, 2006 WL 825266, at *2.  The

26   court declined to apply the exclusion on the basis of the

27   allegations in the underlying complaint alone.  Id. at *6.

28   Instead, the Court held that, in order for the exclusion to apply,

**United States District Court**
For the Northern District of California

the insurer must demonstrate, "through proof of either evidentiary facts or a final adjudication, that the underlying . . . complaint arose out of an unlawful profit or advantage to which [the insured] was not legally entitled." Id. at *7.  The Court reasoned that "requir[ing] an actual adjudication or determination of fact prior to application of the profit or advantage exclusion[] more appropriately effectuate[s] the goal of giving the phrase 'in fact' its ordinary and popular meaning." Id. at *5.

The dispute between Axis and the Telekenex Defendants boils down to whether the Court may look to the allegations and evidence presented in the Straitshot action to determine whether the Policy's Unlawful Advantage Exclusion applies.  Axis argues that allegations and evidence are relevant to the inquiry.  The Telekenex Defendants argue that the Court may look only to the verdict, the judgment, and the elements of the claims on which the jury found for Straitshot.  The Court finds that the appropriate course is somewhere in between.

Unlike the exclusions in Jarvis, Tig, and PMI, the Policy's Unlawful Advantage Exclusion does not refer to a profit or advantage "in fact."  Instead, it refers to a profit or advantage "evidenced by [a] judgment [or] final adjudication."  Accordingly, the verdict, judgment, and findings of fact in the Straitshot action are of primary importance in determining whether the Unlawful Advantage Exclusion applies.  The Court could not look at Straitshot's allegations and evidence alone without doing injustice to the plain meaning of the exclusion.  However, the Court declines to look at the judgment and the Washington court's findings in a vacuum.  This approach would lead to absurd results, especially

12

where the allegations and the judgment, taken together, clearly indicate that an insured gained a profit or an advantage from its wrongful acts, even though a finding of profit or advantage was not a necessary element of the claims asserted.  Accordingly, the Court finds that the better approach is to look at the judgment in the context of the plaintiff's allegations and evidence.  This approach is consistent with the approaches set forth in Jarvis, Tig, and PMI.  In all three of these cases, the courts considered the underlying facts or allegations to some extent.  Jarvis, 197 F.3d at 748; Tig, 375 F.3d at 370; PMI, 2006 WL 25266, at *6.

In this case, the plaintiffs in the Straitshot action alleged that the Telekenex Defendants misappropriated Straitshot's customers and confidential information and presented evidence to that effect.  See Straitshot 5AC, Smith Decl. Exs. 11-20 ("Trial Transcripts").  The jury ultimately found against the Telekenex Defendants on Straitshot's claims for interference with contractual relations and violation of the Washington Consumer Protection Act. In doing so, the jury necessarily found, among other things, that: Straitshot had a valid business relationship with a third party that had the probability of future economic benefit; Telekenex intentionally induced a breach of that relationship; Telekenex used wrongful means to compete; and Telekenex engaged in an unfair or deceptive act or practice by making false statements about Straitshot and its customers in the conduct of its trade or commerce.  Smith Decl. Ex. 6 ("Jury Instructions").  Further, as part of its findings of fact, the Court concluded that Telekenex improperly "us[ed] its access to Straitshot's systems to encourage Straitshot customers to move to Telekenex."  FFCL ¶ 14.  Taken

**United States District Court**
For the Northern District of California

together, these findings constitute clear evidence that Telekenex misappropriated Straitshot's confidential information and customers in an effort to improve its own business.  Accordingly, the $6.49 million judgment against the Telekenex Defendants amounts to "a loss . . . arising out of . . . the gaining of a[] profit . . . or advantage to which [the Telekenex Defendants] w[ere] not legally entitled."  The Telekenex Defendants' contention that they did not profit or gain an advantage from the misappropriation of a competitor's customers is simply not plausible.

The Court reaches a different conclusion with respect to the spoliation sanctions.  The court in the Straitshot action awarded these sanctions after it found that Mr. Summers had intentionally and wrongfully used a Straitshot laptop and then destroyed information on that laptop.  See Spoliation FFCLL ¶¶ 24, 30-31. The Court found that Straitshot was entitled to sanctions from both Telekenex and Mr. and Ms. Summers because Mr. Summers was a Telekenex employee during the relevant period and his actions were within the scope of his employment.  Id. ¶ 31.  The Unlawful Advantage Exclusion does not apply here because there is no indication Telekenex or any of the other Telekenex Defendants profited or otherwise gained a business advantage from Mr. Summers's destruction of evidence.  They may have profited from unlawful appropriation of the confidential information on the laptop, but that was not the basis for the sanctions.  The Telekenex Defendants may have also gained a potential litigation advantage from the destruction of evidence, but the language of the exclusion, which refers to "profit, remuneration, or advantage," does not appear to encompass such an advantage, and the Court is

obliged to construe the exclusion narrowly.  See <u>Villa Los Alamos</u>,

198 Cal. App. 4th at 534.

**B.   Estoppel**

The Telekenex Defendants argue that summary judgment should be

denied on Count I for the independent reason that Axis is estopped

from denying coverage because it failed to inform the Telekenex

Defendants of their right to independent counsel in the <u>Straitshot</u>

action.  This argument is predicated on California Civil Code

section 2860, which provides: "if . . . a conflict of interest

arises which creates a duty on the part of the insurer to provide

independent counsel . . . , the insurer shall provide independent

counsel . . . unless" the insured is informed of the conflict and

then "expressly waives, in writing, the right to independent

counsel."  Cal. Civ. Code § 2860(a).  Section 2860 also provides:

"when an insurer reserves its rights on a given issue and the

outcome of that coverage issue can be controlled by counsel first

retained by the insurer for the defense of the claim, a conflict

may exist."  <u>Id.</u> § 2860(b).

Pursuant to section 2860, an insurer must pay the reasonable

cost for hiring independent counsel by the insured where there are

divergent interests of the insured and the insurer brought about by

the insurer's reservation of rights.  <u>Scottsdale Ins. Co. v.</u>

<u>Housing Group</u>, No. C 94-3864 TEH, 1995 U.S. Dist. LEXIS 8791, at

*5-6 (N.D. Cal. June 21, 1995).  "[N]ot every reservation of rights

creates a conflict of interest requiring appointment of independent

counsel."  <u>Blanchard v. State Farm Fire & Cas. Co.</u>, 2 Cal. App. 4th

345, 350 (1991).  "If the issue on which coverage turns is

independent of the issues in the underlying case, [independent]

United States District Court
For the Northern District of California

counsel is not required.  A conflict of interest does not arise unless the outcome of the coverage issue can be controlled by counsel first retained by the insurer for the defense of the underlying claim."  Id. (internal citations omitted).  Thus, "where the insurer's asserted nonliability has a purely legal basis which is unaffected by the factual determinations made at the liability stage, counsel retained by the insurer faces no conflict of interest in defending the underlying action . . . ."  Scottsdale Ins., 1995 U.S. Dist. LEXIS 8791, at *19.  The reason is that "none of the developments in the underlying action 'matter' for purposes of the coverage defenses the insurer plans to assert later."  Id.

The Telekenex Defendants argue that Axis's appointed counsel had the ability to control the development of various factual matters central to the instant coverage dispute.  MSJ Opp'n at 13. For example, the Telekenex Defendants argue that "Axis plainly had an interest in establishing liability based on a claim involving willful acts or profit" since Straitshot's success on such claims could trigger the policy's Unlawful Advantage Exclusion and California Insurance Code section 533, which bars insurance claims for losses caused by the willful acts of the insured.  Id.

The Telekenex Defendants contend that Axis ran afoul of section 2860 since it agreed to defend the Straitshot action subject to a reservation of rights and then appointed its own counsel to represent the Telekenex Defendants without informing them of a potential conflict or obtaining their consent.  Id. at 13-14.  They further argue that because Axis failed to inform the Telekenex Defendants of their right to independent counsel, Axis is estopped from denying coverage.  Id. at 14 (citing Clarendon Nat'l

United States District Court
For the Northern District of California

1   Ins. Co. v. Ins. Co. of the W., 442 F. Supp. 2d 914, 941-43 (E.D.

2   Cal. 2006)).

3       The Court finds that Axis is not estopped from denying

4   coverage.  In this context, "[e]stoppel requires proof by the

5   insured of detrimental reliance, as well as proof of a reasonable

6   belief that the insurer would provide coverage."  Clarendon, 442 F.

7   Supp. 2d at 942 (internal citations omitted).  California courts

8   have found detrimental reliance where there is a conflict of

9   interest and the insurer deprives the insured of separate counsel

10  or an opportunity to request such counsel until it was too late,

11  e.g., on the eve of trial.  See id. (citing Stonewall Ins. Co. v.

12  City of Palos Verdes Estates, 46 Cal. App. 4th 1810, 1838-39

13  (1996)).  The Telekenex Defendants have failed to show such

14  detrimental reliance here.  The Policy expressly provided Telekenex

15  with the right to select independent counsel, regardless of

16  concerns about conflicts of interest.  Policy § V.C, as amended by

17  Endorsement No. 1 ("[T]he Insureds shall have the right to assume

18  the defense of any claim.").  The Telekenex Defendants initially

19  exercised that right by selecting independent counsel to defend the

20  Straitshot action.  Odalen Decl. Ex. 4.  That counsel later

21  withdrew pursuant to a court order because of a conflict of

22  interest and, sometime thereafter, Axis agreed to accept the duty

23  to defend and appoint other counsel.  Id.  There is no indication

24  that the Telekenex Defendants objected to the appointment of new

25  counsel, even though, at the time the counsel was appointed,

26  Telekenex was fully aware that Axis had reserved its rights under

27  the Policy.  See Odalen Decl. Ex. 3, Chaney Decl. Ex. B.

28      In sum, the Telekenex Defendants should have been aware of any

United States District Court
For the Northern District of California

conflicts associated with Axis's appointed counsel and they had
ample opportunity to appoint their own counsel.  Accordingly, there
is no evidence that the Telekenex Defendants detrimentally relied
on Axis's counsel and, thus, no ground for finding that Axis is
estopped from denying coverage.  For these reasons, as well as the
reasons set forth in Section IV.A supra, Axis's motion for summary
judgment on Count I is GRANTED in part and DENIED in part.  The
Court finds that the Unlawful Advantage Exclusion applies to the
$6.49 million judgment against the Telekenex Defendants but not to
the spoliation sanctions.

C.   **California Insurance Code Section 533**

Axis also moves for summary judgment on Count II on the ground
that California Insurance Code section 533 precludes coverage.  MSJ
at 18.  The Telekenex Defendants respond that Washington law, not
California law, applies here, and, even if California law did
apply, section 533 does not bar coverage.  MSJ Opp'n at 15-16.

The Court first addresses the threshold question of choice of
law.  In cases such as this, California courts employ the so-called
governmental-interest approach to determine which law governs.  See
Frontier, Cal. App. 4th at 1442-43.  Under this approach, the Court
must first determine whether the applicable law of California and
Washington materially differ.  See id. at 1454.  The parties appear
to agree that there is nothing comparable to California Insurance
Code section 533 in Washington law.  Accordingly, the Court
proceeds to the next step of the analysis to determine whether both
California and Washington have an interest in applying their own
law.  The Court concludes that they do.  The underlying Straitshot
action was adjudicated in Washington under Washington law,

United States District Court
For the Northern District of California

Telekenex is based out of California, and the other Telekenex Defendants reside in both California and Washington.  Accordingly, the Court turns to the final and most complex step of the governmental interest analysis to determine which state's interest would be more impaired if its law were not applied.  See id. at 1454-55.

In evaluating the respective interests of the parties and the states in this context, California courts often consider the language of the insurance policy.  See Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc., 14 Cal. App. 4th 637, 645 (1993).  For example, choice-of-law provisions are generally enforced.  Id.  Where, as here, the policy contains no such choice-of-law provision, California courts will consider the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the residence or location of the parties.  Id. at 646.  "[P]articular importance is placed on the location of the subject matter of the contract, i.e. the location of the insured risk."  Id.  Where a policy insures against risks located in several states, e.g., where the policy contains amendatory endorsements for multiple states, courts will often apply the law of the state of the principal location of the particular risk involved.  Id. at 646-47.  However, in the absence of multiple state-specific endorsements or other references to multiple states, courts have declined to find that the laws of multiple states govern a policy.  See Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 472 F. Supp. 2d 1183, 1206 (S.D. Cal. 2007).

In this case, the facts suggest that the parties contemplated

**United States District Court**
For the Northern District of California

California as the location of the insured risk when they executed the Policy.  When it applied for the Policy, Telekenex represented that 100 percent of its 113 employees were located in California. Application at A-4.  Further, the Policy itself identifies San Francisco, California as Telekenex's address.  Policy at 1.  The Policy includes only one state-specific amendatory endorsement, and that endorsement refers to California.  Id. at 10.  Contrary to the Telekenex Defendant's argument, MTD Reply at 2, there is no indication that the parties intended for the Policy to be treated as multiple, separate policies, each insuring an individual risk in a different state.  "The Policy's explicit reference to [California] (and no other state) supports the application of [California] law." Costco, 472 F. Supp. 2d at 1206.  The respective residences of the individual defendants also support the application of California law.  Messrs. Zabit and Chaney, Telekenex's former president and CEO, respectively, are residents of California.  Am. Compl. ¶¶ 4-5.  While Messrs. Prudell, Radford, and Summers are residents of Washington, they were not employed by Telekenex when it executed the Policy.  See id. ¶¶ 6-7.

Further, the Court finds that the impairment analysis otherwise favors the application of California law.  The Telekenex Defendants argue that Washington has the greatest interest in this dispute because it arises out of the Straitshot action, which was litigated in Washington, based on acts and omissions by Washington residents in Washington state, and concerned harm to Straitshot, which is based out of Washington.  However, "applying [California] law will not materially impair [Washington]'s interest because the parties are disputing coverage, rather than compensation." Costco,

**United States District Court**
For the Northern District of California

472 F. Supp. 2d at 1206.  Washington's primary concern is compensation for Straitshot, a Washington corporation.  See id. Who cuts the check, the Telekenex Defendants or Axis, is considerably less important.  See id.  On the other hand, California has a considerable interest in the Policy because it was executed in this state and the facts suggest that the parties intended for California law to govern its application.  See id.

Accordingly, the Court finds that California law governs.  The next step is to determine whether California Insurance Code section 533 is applicable.  Section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."  Cal. Ins. Code § 533.  "The statute reflects a fundamental public policy of denying coverage for willful wrongs and discouraging willful torts."  Shell Oil Co. v. Winterthur Swiss Ins. Co., 12 Cal. App. 4th 715, 739 (1993).  For the purposes of section 533, a willful act includes "an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to result."  Id. at 742.  It also includes an intentional and wrongful act "in which the harm is inherent in the act itself."[5]  Mez Indus., Inc. v. Pac. Nat. Ins. Co., 76 Cal. App. 4th 856, 875-76 (1999) (internal quotations omitted).  Section 533 does

---

[5] The Telekenex Defendants cite authority indicating that section 533 also requires a "preconceived design to inflict injury."  MSJ Opp'n at 2 (citing Clemmer v. Hartford Ins. Co., 22 Cal. 3d 865, 887 (1978)).  However, since that authority was decided, the California Supreme Court has held that a showing of specific intent is unnecessary "if the harm was inherent in the act itself." Trailer Marine Transp. Corp. v. Chicago Ins. Co., 791 F. Supp. 809, 811 (N.D. Cal. 1992) (citing J.C. Penney Casualty Ins. Co. v. M.K., 52 Cal. 3d 1009 (1991)).

**United States District Court**
For the Northern District of California

1   not bar indemnification for a principal where it is held

2   vicariously liable for the willful acts of its agent.  <u>See</u>

3   <u>Fireman's Fund Ins. Co. v. City of Turlock</u>, 170 Cal. App. 3d 988,

4   1001 (1985).

5         In this case, the Telekenex Defendants' actions come within

6   the scope of "wilful acts," as that term has been defined in the

7   context of section 533.  The jury found each and every Telekenex

8   Defendant liable for interference with contractual relations.  As

9   set forth by the court in the <u>Straitshot</u> action, the elements of

10   interference are: (1) a valid contractual or business relationship,

11   (2) the defendant knew of the existence of that relationship, (3)

12   the defendant intentionally caused the termination of that

13   relationship, (4) the defendant's conduct was for an improper

14   purpose or by improper means, and (5) the defendant's conduct was a

15   proximate cause of plaintiff's damages.  Jury Instructions at 27.

16   Accordingly, in finding the Telekenex Defendants liable, the jury

17   necessarily found that they acted intentionally with an improper

18   purpose or by improper means and that their actions caused

19   Straitshot harm.  As the Telekenex Defendants' conduct involved

20   misappropriating Straitshot's customers, Straitshot's damages were

21   highly probable or substantially certain.

22         The Telekenex Defendants argue that the jury expressly found

23   that the Telekenex Defendants did not act willfully.  MSJ Opp'n at

24   19.  This argument is unavailing because it relies on the portion

25   of the verdict dealing with Straitshot's claim for misappropriation

26   of trade secrets (rather than the contractual interference claim).

27   The special verdict form in the <u>Straitshot</u> action asked the jury to

28   decide whether the defendants were liable for misappropriation of

**United States District Court**
For the Northern District of California

1  trade secrets and, if so, whether that misappropriation was "wilful

2  and malicious."  Straitshot Verdict Questions 5, 5a.  The jury

3  ultimately found that defendants were not liable for

4  misappropriation for trade secrets, so it never reached the

5  question of willfulness.  See id.  Contrary to the Telekenex

6  Defendants' argument, this does not suggest that the jury found

7  that the defendants' interference with Straitshot's contractual

8  relations was not willful.

9       The Telekenex Defendants also argue that section 533 is

10  inapplicable because the named insured, Telekenex, did not commit

11  any willful acts -- it was found liable because of the acts of its

12  employees.  MSJ Opp'n at 18.  They again point to the Straitshot

13  Verdict, id., which establishes that the jury held each defendant

14  liable for interference with contractual relations "solely on the

15  basis that he or it acted in concert with one or more other

16  defendants."  Straitshot Verdict Question No. 4a.  The Telekenex

17  Defendants reason that "[s]ince all Axis's insureds are only

18  vicariously liable according to the special verdict form," section

19  533 does not preclude coverage.  MSJ Opp'n at 19 (citing Fireman's,

20  170 Cal. App. 3d at 1001).  This argument lacks merit as it applies

21  to coverage for damages flowing from Straitshot's claim for

22  interference with contractual relations.  Nothing in the Straitshot

23  verdict suggests that the jury found Telekenex liable under some

24  theory of vicarious liability.  Rather, the verdict indicates that

25  Telekenex was acting "in concert" with the other defendants to

26  carry out the scheme to misappropriate Straitshot's customers.  In

27  finding that the defendants acted in concert, the jury necessarily

28  found that they "consciously act[ed] together in an unlawful

manner." <u>Kottler v. State</u>, 136 Wash. 2d 437, 448 (1998).

However, the Telekenex Defendants' argument regarding vicarious liability does have merit with respect to the spoliation sanctions issued against Mr. Summers and Telekenex.  While Mr. Summers' actions in destroying evidence may have been willful, there is no indication that he qualified as an insured under the Policy.  Indeed, Axis appears to suggest that Mr. Summers was not an insured under the Policy.  <u>See</u> MSJ Reply at 12.  Telekenex is an insured under the Policy, but it was only held liable under the doctrine of respondeat superior.  Spoliation FFCL  ¶ 31. Accordingly, section 533 does not preclude coverage.  <u>See</u> <u>Fireman's</u>, 170 Cal. App. 3d at 1001.  Axis argues that, "[b]ecause the conduct underlying the spoliation of evidence adjudication is intertwined with the unlawful schemes underlying the judgment for which Telekenex was held directly liable, . . . the Willful Acts exclusion applies."  MSJ Reply at 12.  However, Axis has offered no evidence showing how the two schemes were intertwined.  Nothing in the Spoliation Findings of Fact and Conclusions of Law suggests that Telekenex or any of its principals directed or expected Mr. Summers to destroy evidence as part of the scheme to interfere with Straitshot's contractual relations.

For these reasons, Axis's motion for summary judgment on Count II is GRANTED in part and DENIED in part.  The Court finds that section 533 bars coverage for damages flowing from Straitshot's claim for interference with contractual relations but not for the spoliation sanctions.

///

///

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

D.   **Coverage for IXCH**

Axis also moves for summary judgment on Count III, arguing that IXCH is not entitled to coverage under the Policy.  IXCH and Telekenex executed an asset purchase agreement in August 2010, through which IXCH agreed to purchase Telekenex's assets and assume its liabilities.  Chaney Decl. ¶ 4.  It is undisputed that IXCH is not an insured under the Policy's terms; that, under the Policy's terms, Telekenex could not unilaterally assign its rights under the Policy; and that Axis never agreed to allow Telekenex to assign its rights under the Policy to IXCH.  However, the Telekenex Defendants argue that, regardless of the Policy language, the right to coverage, defense, and indemnity, transferred to IXCH by operation of law when it purchased Telekenex's assets and agreed to assume its liabilities.  MSJ Opp'n at at 21.

The Telekenex Defendants rely on the Ninth Circuit's decision in Northern Insurance Co. of New York v. Allied Mutual Insurance Co., 955 F.2d 1353 (9th Cir. 1992).  In Northern, as here, the question presented was whether the right to indemnity under an insurance policy transferred to a successor that had assumed its predecessor's liabilities, even though the insurance policy contained a no-assignment clause.  955 F.2d at 1357.  The Ninth Circuit concluded that the policy benefits were transferred by operation of California law, reasoning that "the rationale for honoring 'no assignment' clauses vanishes when liability arises from presale activity."  Id. at 1357-58.

While Northern clearly favors the Telekenex Defendants on Count V, it appears that Northern is no longer good law.  After the case was decided, a number of California courts, including the

**United States District Court**
For the Northern District of California

California Supreme Court, rejected the principle that the finding of successor liability entitles a successor, by operation of law, to the insurance coverage of its predecessor. See Henkel Corp. v. Hartford Accident & Indem. Co., 29 Cal. 4th 934, 943 (2003) ("Whether or not [predecessor] assigned any benefits under the liability policies to [successor], any such assignment would be invalid because it lacked the insurer's consent."); Gen. Accident Ins. Co. v. Super. Ct., 55 Cal. App. 4th 1444, 1454 (1997) ("finding of successor liability in tort does not entitle the successor corporation, by operation of law, to the insurance coverage of its corporate predecessor").

As IXCH is not an insured under the Policy and there is no indication that Axis consented to an assignment of the Policy benefits to IXCH, the Court GRANTS Axis's motion for summary judgment with respect to Count III.

///
///
///
///
///
///
///
///
///
///
///
///
///

United States District Court
For the Northern District of California

1  **V.    <u>CONCLUSION</u>**

2       For the foregoing reasons, Plaintiff Axis Reinsurance

3  Company's motion for partial summary judgment is GRANTED in part

4  and DENIED in part.  With respect to Count I, the Court finds that

5  the Policy's Unlawful Advantage Exclusion Code bars coverage for

6  the $6.49 million judgment against the Telekenex Defendants but not

7  coverage for the spoliation sanctions.  With respect to Count II,

8  the Court finds that California Insurance Code section 533

9  precludes coverage for damages flowing from Straitshot's claims for

10  interference with contractual relations but not for damages flowing

11  from the spoliation sanctions.  With respect to Count V, the Court

12  finds that IXC Holdings, Inc. is not an insured under the Policy as

13  a matter of law.

14

15       IT IS SO ORDERED.

16

17       Dated: December 19, 2012

18                                    UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28