TROUTMAN SANDERS LLP
Terrence R. McInnis, Bar No. 155416
terrence.mcinnis@troutmansanders.com
Ross Smith, Bar No. 204018
ross.smith@troutmansanders.com
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone:     949.622.2700
Facsimile:      949.622.2739

*Attorneys for Plaintiff*
*AXIS Reinsurance Company*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXIS REINSURANCE COMPANY,<br>                    Plaintiff,<br>       v.<br>TELEKENEX, INC.; ANTHONY ZABIT; KAREN SALAZAR; BRANDON CHANEY; DEANNA CHANEY; MARK PRUDELL; JOY PRUDELL; MARK RADFORD; NIKKI RADFORD; JOSHUA SUMMERS; JULIA SUMMERS; IXC HOLDINGS, INC.; STRAITSHOT COMMUNICATIONS, INC.; STRAITSHOT RC, LLC,<br>                    Defendant. | Case No. 3:12-cv-02979-SC<br><br>**PLAINTIFF AXIS REINSURANCE COMPANY'S APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS MARK RADFORD AND NIKKI RADFORD**<br><br>DATE: February 7, 2014<br>TIME: 10:00 a.m.<br>COURTROOM: 1 |

## NOTICE OF APPLICATION AND APPLICATION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on February 7, 2014 at 10:00 a.m. or as soon thereafter as this matter may otherwise be heard in Courtroom 1 of this Court, located on the 17th floor at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff AXIS Reinsurance Company ("AXIS") will and hereby does apply to this Court pursuant to Federal Rule of Civil Procedure 55(b)(2) for default judgment against Defendants Mark Radford and Nikki Radford.

AXIS's Application is based on the accompanying memorandum of points and authorities, the declaration of Ross Smith, the record and pleadings on file, and upon any and all other evidence or matter the Court may consider at or before the hearing of this Application.

20261433v5

APPLICATION FOR DEFAULT JUDGMENT AGAINST MARK RADFORD AND NIKKI RADFORD

1

2   Dated: December 27, 2013					Respectfully submitted,

3								TROUTMAN SANDERS LLP

4
								By:  /s/ Ross Smith
5								    Terrence R. McInnis
								    Ross Smith
6								    *Attorneys for Plaintiff*
								    AXIS Reinsurance Company
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

20261433v5                          - 2 -                     APPLICATION FOR DEFAULT JUDGMENT
                                                              AGAINST MARK RADFORD AND NIKKI
                                                                                       RADFORD

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1
II. FACTUAL BACKGROUND ......................................................................................... 1
    A. The Policy ........................................................................................................... 1
    B. The Straitshot Action .......................................................................................... 2
    C. The Present Coverage Action .............................................................................. 4
    D. The Radfords' Default ......................................................................................... 4
III. ENTRY OF DEFAULT JUDGMENT IS PROPER ....................................................... 5
    A. Legal Standard .................................................................................................... 5
    B. Proof of Service .................................................................................................. 6
    C. *Eitel* Factors ....................................................................................................... 6
IV. CONCLUSION ............................................................................................................ 13

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

20261433v5      - i -      APPLICATION FOR DEFAULT JUDGMENT AGAINST MARK RADFORD AND NIKKI RADFORD

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aldabe v. Aldabe*,
   616 F.2d 1089 (9th Cir. 1980) ................................................................................................... 5

*Board of Trustees v. Core Concrete Constr., Inc.*,
   No. 11-3259 SC, 2012 U.S. Dist. LEXIS 19778 (N.D. Cal. Feb. 16, 2012) ........................... 5

*Bogatin v. Federal Ins. Co.*,
   No. 99-4441, 2000 U.S. Dist. LEXIS 8632 (E.D. Pa. June 21, 2000) ..................................... 8

*Don Burton, Inc. v. Aetna Life & Casualty Co.*,
   575 F.2d 702 (9th Cir. 1978) ................................................................................................. 10

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986) ...................................................................................... 6, 11, 12

*Freightquote.com, Inc. v. Hartford Cas. Ins. Co.*,
   397 F.3d 888 (10th Cir. 2005) ............................................................................................... 10

*Geddes v. United Fin. Group*,
   559 F.2d 557 (9th Cir. 1977) ................................................................................................... 6

*J.C. Penney Cas. Ins. Co. v. M.K.*,
   52 Cal. 3d 1009 (1991) ............................................................................................................ 8

*Jarvis Christian College v. National Union Fire Ins. Co.*,
   197 F.3d 742 (5th Cir. 1999) ................................................................................................ 7, 8

*Kottler v. State*,
   963 P.2d 834 (Wash. 1998) ................................................................................................... 10

*Leingang v. Pierce County Medical Bureau*,
   930 P.2d 288 (Wash. 1997) ................................................................................................ 9, 11

*Liberty Mut. Ins. Co. v. Cont'l Ins. Co.*,
   159 Fed. Appx. 827 (10th Cir. 2005) ...................................................................................... 9

*Mez Indus., Inc. v. Pac. Nat'l Ins. Co.*,
   76 Cal. App. 4th 856 (1999) ................................................................................................... 8

*Pepsico, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) ..................................................................... 6, 11, 12

*Plainview Milk Prods. Coop. v. Westport Ins. Corp.*,
   182 F. Supp. 2d 852 (D. Minn. 2001) ..................................................................................... 7

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Trailer Marine Transport Corp. v. Chicago Ins. Co.*,
  791 F. Supp. 809 (N.D. Cal. 1992) .................................................................................................. 10

*Uhrich v. State Farm Fire & Casualty Co.*,
  109 Cal. App. 4th 598 (2003) ............................................................................................................ 10

*Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*,
  990 F.2d 598 (11th Cir. 1993) ............................................................................................................ 9

**STATUTES**

California Insurance Code section 533 ................................................................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4 ....................................................................................................................... 6

Fed. R. Civ. P 12 ...................................................................................................................... 4

Fed. R. Civ. P. 15 ..................................................................................................................... 5

Fed. R. Civ. P. 55 ........................................................................................................... 5, 12, 13

10th Cir. R. 32.1(a) .................................................................................................................. 9

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

20261433v5 — - ii - — APPLICATION FOR DEFAULT JUDGMENT AGAINST MARK RADFORD AND NIKKI RADFORD

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this insurance coverage action, plaintiff AXIS Reinsurance Company seeks a judicial declaration that an insurance policy it issued to Telekenex, Inc. does not afford coverage for an underlying suit brought by the policyholder's former competitor captioned *Straitshot Communications, Inc. v. Telekenex, Inc. et al.*, No. C10-268 TSZ (W.D. Wash) (the "*Straitshot* action"). Defendants Mark Radford and Nikki Radford were properly served with the summons and complaints in this action and have not filed an appearance or defended. *See* Smith Decl. at ¶¶ 3-8; ECF Doc. Nos. 13, 14, 22, 23. As such, the Clerk of the Court entered their default, and entry of default judgment is now appropriate. *See* Smith Decl. at ¶9; ECF Doc. Nos. 25, 26. By this Application, AXIS respectfully requests that the Court enter a *non-monetary* default judgment against defendants Mark Radford and Nikki Radford based on the well pled allegations of AXIS's First Amended Complaint, consistent with this Court's December 19, 2012 ruling on the merits of Declaratory Relief Counts I and II as against the defendants not in default.[1]

## II.   FACTUAL BACKGROUND

### A.   The Policy

AXIS issued Privatus Policy RNN585200 to Telekenex, Inc. in San Francisco, California for the April 27, 2008 to April 27, 2009 Policy Period (the "Policy"). FAC ¶ 17. Subject to other terms and conditions, the Policy covers **Claims** for **Wrongful Acts** defined, in relevant part, as:

> any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by … any **Insured Individual** in their capacity as such; … or any matter claimed against any **Insured Individual** solely by reason of their serving in their capacity as such … .

FAC ¶ 61. **Insured Individual** means, in relevant part, any one or more natural persons who are past, present or future:

---

[1] AXIS's First Amended Complaint seeks, in addition to declaratory relief, reimbursement of amounts AXIS paid to defend the underlying *Straitshot* action under a reservation of rights. As part of its proposed Order granting default judgment against the Radfords, however, AXIS agrees to voluntarily dismiss its reimbursement-related causes of action against the Radfords (*i.e.*, Counts VII and VIII), without prejudice. But AXIS does not agree to voluntarily dismiss any of its claims if the Court denies this motion.

> individuals compensated by the **Policyholder** through wages, salary and/or commissions and whose labor or service is directed by the **Policyholder**, whether such labor or service is on a part-time, temporary, seasonal, or full-time basis …

FAC ¶ 62. Telekenex, Inc. is the policyholder. FAC ¶ 3. Thus, the Policy does not cover **Loss** arising from acts, errors, or omissions of the individual defendants in any capacities other than as employees of Telekenex, Inc. FAC ¶ 63.

The Policy extends coverage to lawful spouses of **Insured Individuals** if the **Claim** against them is included solely by reason of "such spouse's status as a spouse of the **Insured Individual**" or "such spouse's ownership interest in property from which the claimant seeks recovery for the **Wrongful Acts** of the **Insured Individual**," but such coverage exists "only if and to the extent that such loss would be covered under this Policy if incurred by the **Insured Individual**."

The Policy is subject to certain exclusions including, as pertinent here, an Unlawful Advantage Exclusion for **Loss**

> based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving: … the gaining of any profit, remuneration, or advantage to which the **Insured** was not legally entitled … if evidenced by any judgment …

FAC ¶ 41. Also, California Insurance Code section 533 is an implied exclusionary clause read into all insurance policies governed by California law, which bars insurance coverage for willful acts of the insured. FAC ¶ 48.

### B. The *Straitshot* Action

On or about February 5, 2009, Straitshot Communications, Inc. initiated the underlying *Straitshot* action. FAC ¶¶ 11, 19. At the time of trial, the Fifth Amended Complaint was the operative pleading, which included the following allegations. The *Straitshot* action arises out of unlawful schemes agreed to and perpetrated by the Telekenex Defendants, including Mark Radford, in order to abscond with, and ultimately destroy, the business of Straitshot for their benefit. Straitshot was a managed network service provider to small and medium-sized companies that enabled enterprises to share mission-critical data, voice and hosted applications between multiple locations. Telekenex was a competitor. Beginning in October 2008 and

20261433v5 - 2 - APPLICATION FOR DEFAULT JUDGMENT AGAINST MARK RADFORD AND NIKKI RADFORD

1   continuing through February 2009, Telekenex made overtures to Straitshot suggesting that the
2   companies consider combining their resources.  Meanwhile, Straitshot's Regional Sales Directors,
3   Mark Radford and Mark Prudell, were secretly diverting business opportunities to Telekenex and
4   providing Telekenex with confidential information belonging to Straitshot, including customer
5   lists, contact, circuit diagrams, and pricing information.  Mark Radford and Mark Prudell had
6   signed non-competition, confidentiality, and non-solicitation agreements with Straitshot.  Mark
7   Radford, Mark Prudell, and Telekenex solicited Straitshot's customers and made false
8   representations that Straitshot was going out of business in an effort to induce them to switch
9   their service to Telekenx.  Mark Radford and Mark Prudell also successfully solicited Straitshot's
10  engineers to leave Straitshot and join Telekenex, which resulted in the loss of Straitshot's entire
11  engineering department.  Straitshot's Director of Engineering, Joshua Summers, used Straitshot's
12  equipment and information to facilitate the transfer of Straitshot's customer circuits to Telekenex'
13  network.  FAC ¶ 22.
14      Straitshot's Fifth Amended Complaint also included as a defendant Mark Radford's
15  spouse as part of the marital community allegedly liable.  FAC ¶ 23.  Nikki Radford is Mark
16  Radford's spouse.  FAC ¶ 7.
17      On February 6, 2012, the jury returned a verdict finding in Straitshot's favor and against
18  Mark Radford on: breach of employment contract, interference with Straitshot's contractual
19  relations with Straitshot's customers, and violation of the Consumer Protection Act.  Despite
20  finding against Mark Radford on the breach of employment contract cause of action, the jury
21  awarded no damages on that cause of action.  However, the jury awarded $6,490,000 on the
22  remaining causes of action based on the total destruction of Straitshot Communications, Inc.
23  FAC ¶ 25.
24      On February 23, 2012, the Court issued Findings of Fact and Conclusions of Law in
25  which it found that there was substantial evidence presented at trial to support the jury's findings.
26  The Court also found that Nikki Radford was a proper defendant because judgments holding
27  individual defendants liable for intentional torts committed by one spouse for the benefit of the
28  marital community are judgments against the individual defendants' marital communities.  FAC ¶

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

20261433v5                                          - 3 -                   APPLICATION FOR DEFAULT JUDGMENT
                                                                            AGAINST MARK RADFORD AND NIKKI
                                                                                        RADFORD

26. Accordingly, on February 23, 2012, the Court entered judgment against Mark Radford, Nikki Radford, and the other Telekenex Defendants, consistent with the jury's verdict and the Court's Findings of Fact and Conclusions of Law. FAC ¶ 27.

### C.  The Present Coverage Action

AXIS filed this action on June 8, 2012, for a declaratory judgment that the Policy does not cover any losses incurred by the Telekenex Defendants, including the Radfords, in connection with the *Straitshot* action. *See* ECF Doc. Nos. 1, 3. The operative First Amended Complaint in this action asserts eight counts: (I) Declaratory Relief – Unlawful Advantage Exclusion; (II) Declaratory Relief – Insurance Code §533; (III) Declaratory Relief – No Coverage for Spoliation Penalties; (IV) Declaratory Relief – No Coverage for Breach of Duty of Loyalty; (V) Declaratory Relief – No Coverage for Non-Insured IXC Holdings; (VI) Declaratory Relief – Allocation for Uncovered Amounts; (VII) Equitable Indemnity; and, (VIII) Restitution and Reimbursement. For this Application, only the first two counts and the sixth count are pertinent.[2]

### D.  The Radfords' Default

By June 27, 2012, counsel for AXIS caused the summons, complaint, a request to waive service of summons, two copies of a waiver form, and a self-addressed stamped envelope to be mailed to defendants Mark Radford and Nikki Radford. *See* Smith Decl. at ¶3. Mr. and Mrs. Radford returned their signed waivers dated July 5, 2012, which have been filed with the Court. *See* ECF Doc. Nos. 13, 14. Each signed waiver states defendants understand that they have 60 days from the date when the request was sent to file and serve an answer or a motion under Rule 12, and that, if the defendants fail to do so, a default judgment will be entered against them. *See* Smith Decl. at ¶4. Mr. and Mrs. Radford's answers to the complaint were due August 27, 2012. *See* Smith Decl. at ¶5.

---

[2] Counts III through V do not pertain to the Radfords. Count III concerns coverage for spoliation sanctions, but the Radfords were not sanctioned; Count IV concerns coverage for the breach of duty of loyalty cause of action, for which the Radfords were not found liable; and Count V concerns coverage for IXC Holdings, Inc. As to Counts VII and VIII, as previously noted, conditioned on the Court granting this motion for a default judgment against the Radfords, AXIS agrees that the Court may dismiss without prejudice these reimbursement-related counts as against the Radfords only.

20261433v5 - 4 - APPLICATION FOR DEFAULT JUDGMENT AGAINST MARK RADFORD AND NIKKI RADFORD

1   In the meantime, AXIS filed a First Amended Complaint on July 27, 2012, and served a copy of it on Mr. and Mrs. Radford the same day. *See* ECF Doc. No. 15, pp. 22-23. Federal Rule of Civil Procedure 15 provides: "Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Accordingly, the Radfords' answers to the First Amended Complaint were still due on August 27, 2012.

On September 10, 2012, because the Radfords did not appear, plead or otherwise defend within the time allowed, AXIS applied for entry of default against them. *See* ECF Doc. No. 25. On September 12, 2012, the Clerk of the Court entered default against Mark Radford and Nikki Radford. *See* ECF Doc. No. 26.

The Radfords have not made an appearance or moved to set aside the default since the Clerk of the Court entered it. Since the entry of default against the Radfords, AXIS has obtained partial summary judgment on Counts I, II, and V of the First Amended Complaint against all defendants who have appeared in the case. *See* ECF Doc. No. 68.

### III. ENTRY OF DEFAULT JUDGMENT IS PROPER

#### A. Legal Standard

After entry of default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b)(2). Its decision whether to do so, while discretionary, *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980), is guided by several factors. As a preliminary matter, the Court must "assess the adequacy of the service of process on the party against whom default judgment is requested." *Board of Trustees v. Core Concrete Constr., Inc.*, No. 11-3259 SC, 2012 U.S. Dist. LEXIS 19778, at *3 (N.D. Cal. Feb. 16, 2012). If the Court determines that service was sufficient, it should consider whether the following factors support the entry of default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of a plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "The general rule of law is that

20261433v5 - 5 - APPLICATION FOR DEFAULT JUDGMENT AGAINST MARK RADFORD AND NIKKI RADFORD

1  upon default the factual allegations of the complaint, except those relating to the amount of

2  damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

3  **B.   Proof of Service**

4  Here, there is no question about the adequacy of service of process as Mr. and Mrs.

5  Radford each signed and returned written waivers after receiving a copy of the summons and

6  AXIS's complaint. *See* Smith Decl. at ¶¶3-7; *See* ECF Doc. Nos. 13, 14. "When the plaintiff

7  files a waiver, proof of service is not required and these rules apply as if a summons and

8  complaint had been served at the time of filing the waiver." F.R.C.P. Rule 4(d)(4). After

9  receiving the signed waivers, and before the Radfords were in default, AXIS properly served Mr.

10 and Mrs. Radford with a copy of its First Amended Complaint. *See* Smith Decl. at ¶7, ECF Doc.

11 No. 15, pp. 22-23. Accordingly, service of process was adequate.

12 **C.   *Eitel* Factors**

13 The Ninth Circuit's *Eitel* factors weigh heavily in favor of entering default judgment

14 against the Radfords.

15 As to the first *Eitel* factor, if this Application for default were denied, AXIS would be

16 prejudiced because it would be without other recourse. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238

17 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not

18 granted, Plaintiffs will likely be without other recourse"). Accordingly, the first factor weighs in

19 favor of entering a default judgment.

20 The second and third *Eitel* factors relate to whether the facts set forth in the complaint

21 sufficiently state claims for relief. AXIS's First Amended Complaint satisfies these factors, as

22 well.

23 With respect to Counts I (Declaratory Relief – Unlawful Advantage Exclusion) and VI

24 (Declaratory Relief – Allocation/Uncovered Amounts), the allegations of AXIS's complaint

25 demonstrate that the Policy's Unlawful Advantage Exclusion applies, which bars coverage for

26 **Loss**

27 based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving: … the gaining of any profit, remuneration, or advantage to which the **Insured** was not

28 legally entitled … if evidenced by any judgment …

20261433v5                           - 6 -                  APPLICATION FOR DEFAULT JUDGMENT AGAINST MARK RADFORD AND NIKKI RADFORD

FAC ¶ 41. As alleged in AXIS's First Amended Complaint, the amounts awarded in the *Straitshot* action are based upon, arise out of, directly or indirectly result from, are in consequence of, or involve the gaining of any profit, remuneration, or advantage to which the Insureds were not legally entitled. The underlying judgment confirms that Mark Radford (and the other Telekenex Defendants) gained advantage to which he was not legally entitled by, for example, migrating Straitshot customers to Telekenex through improper means and driving a competitor out of business. At trial, the Telekenex Defendants did not dispute that they had some success in migrating Straitshot customers to Telekenex (although they unsuccessfully asserted they were legally entitled to do so). Moreover, the judgment confirms that the Telekenex Defendants' conduct was a substantial, if not the sole, reason Straitshot went out of business. All of the Telekenex Defendants, including Mark Radford, gained some profit, remuneration or advantage by migrating Straitshot customers to Telekenex and driving Straitshot out of business – whether in the form of commissions, income, increased market value, employment opportunities, or otherwise. FAC ¶¶ 42-43.

The term "advantage" is a broad term that encompasses any gain or benefit, including an *opportunity* to profit. *See, e.g., Jarvis Christian College v. National Union Fire Ins. Co.*, 197 F.3d 742, 748-49 (5th Cir. 1999) ("The [term 'advantage'] does not mean a balance-sheet profit; rather, it encompasses any gain or benefit, such as an *opportunity* to make a profit ….") The exclusion applies where an Insured takes something of value that does not belong to them, even if they then give it away to a business associate to curry favor. *See, Plainview Milk Prods. Coop. v. Westport Ins. Corp.*, 182 F. Supp. 2d 852, 854 (D. Minn. 2001) ("The claim at issue is based upon an allegation that Plainview, the insured, obtained money to which it was not legally entitled. Thus, on its face, Exclusion A applies."); *Id*. at 855 ("Plainview is a nonprofit entity which, by definition, cannot enjoy a profit; indeed, Plainview did not retain the money it overcharged Marigold, but, instead, disbursed those additional funds to its member farmers.… Yet even if the overcharged amount does not constitute a 'profit' …, it certainly constitutes an 'advantage.' Plaintiff's ability to provide its membership with dividends is, without question, a corporate advantage.") Misrepresentation for gain has also been recognized as a type of advantage to which

an Insured is not legally entitled, thereby implicating the exclusion. *See, e.g., Bogatin v. Federal Ins. Co.*, No. 99-4441, 2000 U.S. Dist. LEXIS 8632, at *58-60 (E.D. Pa. June 21, 2000) (exclusion applied to Claim that the Insured "made intentional misrepresentations concerning [the Company's] business in order to further his personal interests and gain.")  Mr. Radford stood to personally gain and shared in the advantage gained by shifting some if not all of Straitshot's entire customer base over to Telekenex, and eliminating a competing company. *Jarvis Christian College,* at 197 F.3d 751-52 ("Cosby gained measurable personal advantages from a financial and business perspective, including continuation of a steady monthly salary and the opportunity to make a handsome profit.")

Accordingly, because the judgment evidences that Mark Radford was not legally entitled to the foregoing advantage gained, and the Policy only extends coverage to Nikki Radford to the extent that her husband's liability is covered, the Personal Profit or Advantage Exclusion precludes coverage for the related **Loss** incurred by the Radfords in connection with the *Straitshot* action.

With respect to Count II (Declaratory Relief – Insurance Code section 533), the allegations also establish that any coverage for the Radfords is precluded by California Insurance Code section 533 (the "Willful Acts Exclusion"), which provides that an insurer is not liable for a "wilful act of the insured." Cal. Ins. Code § 533 (2012).  This is "an implied exclusionary clause which by statute is to be read into all insurance policies." *J.C. Penney Cas. Ins. Co. v. M.K.*, 52 Cal. 3d 1009, 1019 (1991).

A "wilful act" includes an act "intentionally performed with knowledge that damage is highly probable or substantially certain to result" or an intentional and wrongful act in which "the harm is inherent in the act itself." *Mez Indus., Inc. v. Pac. Nat'l Ins. Co.*, 76 Cal. App. 4th 856, 876 (1999).  Accordingly, the Willful Acts Exclusion precludes coverage where, as here, liability is based on a knowing, intentional and purposeful violation of another's legal rights, or inducement that others violate such rights. *See, e.g., Mez Indus.,* 76 Cal. App. 4th at 876-77 (Willful Acts Exclusion precludes coverage for inducement of patent infringement); *Liberty Mut. Ins. Co. v. Cont'l Ins. Co.*, 159 Fed. Appx. 827, 834 (10th Cir. 2005) (unpublished) (court held

that California Insurance Code section 533 applied to claim that Insured tried to drive competitor out of business; "7-Up's conduct was a willful attempt to drive Geyser out of business and increase 7-Up's profits from the sale of a copied product. … 7-Up intentionally used Geyser's confidential information to drive Geyser's products out of a specific market and use its own products as a replacement.  The damages to Geyser and the Vances were inherent in 7-Up's desire to 'kill' Geyser products and replace them with Aqua Ice.")[3]

The jury verdict and judgment in the *Straitshot* action found Mr. Radford liable for intentional interference with Straitshot's contractual relations with its customers.  As the jury was instructed, such liability could only be imposed if they found (among other things) that defendant "knew of the existence of the contract or business relationship;" that defendant "intentionally induced or caused a breach of the contract or the termination of the business relationship;" and that "defendant's conduct was for an improper purpose or by improper means[.]"  Thus, in finding liability on this cause of action, the jury necessarily found that Mr. Radford acted willfully and intentionally in causing injury to Straitshot.  FAC ¶ 50.  The jury necessarily found purposeful misconduct similar to that which convinced the court in *Mez Industries* that the Willful Acts Exclusion necessarily barred coverage for inducement to patent infringement.  Liability for intentional interference "requires an improper objective or the use of wrongful means that in fact cause injury to the person's contractual relationship." *Leingang v. Pierce County Medical Bureau*, 930 P.2d 288, 300 (Wash. 1997).  Exercising one's legal interests in good faith is not improper interference. *Id*.  Obviously, damage would flow in the form of losses to Straitshot and gains to the Insureds through the sale of Telekenex' services to Straitshot's customers, which was precisely the asserted goal. *Also see, Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*, 990 F.2d 598, 605 (11th Cir. 1993) ("we conclude that Atkinson's intentional interference claim fell within the policy's intentional acts exclusion.  The complaint alleges that SCI intentionally interfered with Atkinson's business and contractual relations, and Atkinson could not have succeeded on the claim on any lesser showing of intent.");

---

[3] "Unpublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(a).

*Freightquote.com, Inc. v. Hartford Cas. Ins. Co.*, 397 F.3d 888, 894 (10th Cir. 2005) ("the only inference from the totality of circumstances: Freightquote intended to strong arm Gateway and interfere with Gateway's contractual and business relationships with its customers.  There is no plausible claim here that Freightquote acted in good faith.  In short, Freightquote's conduct can only be understood as deliberate interference with Gateway's customer relations and is, therefore, excluded from insurance coverage.")

In finding that Mark Radford and the others were "acting in concert," the jury necessarily found that they "consciously *act[ed]* together in an unlawful manner." *Kottler v. State*, 963 P.2d 834, 841 (Wash. 1998).  For purposes of the Willful Acts Exclusion, it is not necessary that the Insured carry out every single act involved in the unlawful plan or unlawful objectives to which the jury found the defendants agreed. *See, e.g., Don Burton, Inc. v. Aetna Life & Casualty Co.*, 575 F.2d 702, 705-706 (9th Cir. 1978) (insurer was entitled to rely on arson-based defense and the Willful Acts Exclusion if insured aided and abetted arson, even if the insured did not personally start the fire; "Unsurprisingly, the notion that a defense of arson can be defeated by a failure to prove that the insured himself was the incendiarist is not supported by any authority to which our attention has been drawn and we have been unable to find any."); *Trailer Marine Transport Corp. v. Chicago Ins. Co.*, 791 F. Supp. 809, 812 (N.D. Cal. 1992) (insurer entitled to summary judgment that Willful Acts Exclusion barred coverage for insured's liability in connection with antitrust conspiracy).

Moreover, the same conduct underlying the jury's findings of intentional interference with contractual relations also forms the basis for the breach of the violation of the Consumer Protection Act causes of action.  FAC ¶ 51.  Accordingly, coverage for this cause of action, and all amounts awarded in connection with it, is likewise barred as uninsurable under California Insurance Code section 533, and such amounts do not constitute "**Loss**" within the meaning of the Policy. *See, e.g., Uhrich v. State Farm Fire & Casualty Co.*, 109 Cal. App. 4th 598, 611 (2003) (because the entire underlying action was based on a deliberate illegal scheme, the court rejected the invitation to find coverage based on the fact that the underlying complaint included a count labeled negligence and a count labeled defamation, that, in the abstract, would not necessarily

require proof of willful acts; "claims do not exist in the ether, they consist of pleaded allegations coupled with extrinsic facts. That is what defines the insurer's coverage duties, not the label chosen by the pleader.") Regardless of whether, in the abstract, willful acts are necessary to establish liability in all cases under the Washington Consumer Protection Act, for example, Straitshot's allegations, which the jury found to be supported by the evidence, were, in fact, based on conduct for which the Willful Acts Exclusion bars coverage. The jury necessarily found that all Insureds acted with "an improper objective or the use of wrongful means . . . ." *Leingang*, 930 P.2d at 300.

Accordingly, because the conduct underlying Mark Radford's liability in the *Straitshot* action was "willful" within the meaning of Insurance Code section 533, and the Policy extends coverage to Julia Radford's spousal liability only to the extent that her husband's liability is covered, Insurance Code section 533 precludes coverage for the amounts awarded against the Radfords in the *Straitshot* action.

In sum, AXIS does not seek anything by way of this Application that it is not entitled to on the merits. The Policy plainly does not afford coverage for the Radfords' liability in connection with the underlying *Straitshot* Action.

The fourth *Eitel* factor weighs in favor of a default judgment because if this Application is granted there will be no monetary award against the Radfords. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177 ("Plaintiffs are not seeking monetary damages. They seek only injunctive relief … . Accordingly, this factor favors granting default judgment.") As previously noted, and conditioned on this Application being granted, AXIS agrees to voluntarily dismiss counts VII and VIII (seeking recovery of amounts paid by AXIS) against the Radfords. Accordingly, the only relief at issue for the default judgment is a judicial declaration of no coverage.

The fifth *Eitel* factor likewise weighs in favor of a default judgment, because minimal possibility of a dispute regarding the material facts exists. This is because, first of all, upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *See Id*. Furthermore, consistent with the relief AXIS is requesting against the Radfords by way of this Application, the Court has already granted partial summary judgment in AXIS's

20261433v5 - 11 - APPLICATION FOR DEFAULT JUDGMENT AGAINST MARK RADFORD AND NIKKI RADFORD

favor against the Telekenex Defendants not in default on Counts I and II, having determined that the material facts were not in dispute. *See* ECF Doc. No. 68 at p. 14 ("the $6.49 million judgment against the Telekenex Defendants amounts to 'a loss … arising out of … the gaining of a[] profit … or advantage to which [the Telekenex Defendants] w[ere] not legally entitled.' The Telekenex Defendants' contention that they did not profit or gain an advantage from the misappropriation of a competitor's customers is simply not plausible."), and p. 24 ("In this case, the Telekenex Defendants' actions come within the scope of 'wilful acts,' as that term has been defined in the context of section 533. The jury found each and every Telekenex Defendant liable for interference with contractual relations. … Accordingly, … the jury necessarily found that they acted intentionally with an improper purpose or by improper means and that their actions caused Straitshot harm. As the Telekenex Defendants' conduct involved misappropriating Straitshot's customers, Straitshot's damages were highly probable or substantially certain.")[4/5]

The sixth *Eitel* factor similarly favors entry of a default judgment. Defendants expressly waived service and then did not file an answer or otherwise defend the claims against them, and they have not since made any assertion of excusable neglect.

Finally, although decisions on the merits are favored, Rule 55(b) allows entry of default judgment in situations such as this, where a defendant has declined to litigate. *See Pepsico, Inc.*, 238 F. Supp. 2d at 1177 ("the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive. Moreover, Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible.") (Internal cites and quotations omitted). Accordingly, a default judgment is proper here.

---

[4] The Court concluded that the coverage defenses in Counts I and II of AXIS's First Amended Complaint did not apply to the spoliation sanctions awarded against Telekenex, Inc. See ECF Doc. No. 68 at pg. 24. Although AXIS has coverage defenses to the spoliation sanctions as set forth in Count III of its First Amended Complaint that have not yet been adjudicated, no such sanctions were awarded against the Radfords in any event. Accordingly, issues about the sanctions are not relevant to this motion.

[5] In the Court's December 19, 2012 Order, the term "Telekenex Defendants" collectively referred to defendants Telekenex, Inc., Anthony Zabit, Karen Salazar, Brandon Chaney, Deanna Chaney, and IXC Holdings, Inc. See ECF Doc. No. 68 at p. 1.

**IV.   CONCLUSION**

WHEREFORE, for the foregoing reasons and pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff AXIS Reinsurance Company respectfully applies to this Court for entry of default judgments against Defendants Mark Radford and Nikki Radford.

Dated: December 27, 2013                    Respectfully submitted,

TROUTMAN SANDERS LLP


By:  /s/ Ross Smith
    Terrence R. McInnis
    Ross Smith
    *Attorneys for Plaintiff*
    AXIS Reinsurance Company