TROUTMAN SANDERS LLP
Terrence R. McInnis, Bar No. 155416
terrence.mcinnis@troutmansanders.com
Ross Smith, Bar No. 204018
ross.smith@troutmansanders.com
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone:    949.622.2700
Facsimile:    949.622.2739

*Attorneys for Plaintiff*
*AXIS Reinsurance Company*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXIS REINSURANCE COMPANY,<br>Plaintiff,<br>v.<br>TELEKENEX, INC.; ANTHONY ZABIT;<br>KAREN SALAZAR; BRANDON CHANEY;<br>DEANNA CHANEY; MARK PRUDELL;<br>JOY PRUDELL; MARK RADFORD; NIKKI<br>RADFORD; JOSHUA SUMMERS; JULIA<br>SUMMERS; IXC HOLDINGS, INC.;<br>STRAITSHOT COMMUNICATIONS, INC.;<br>STRAITSHOT RC, LLC,<br>Defendant. | Case No. 3:12-cv-02979-SC<br><br>Assigned to the Hon. Samuel Conti<br><br>**PLAINTIFF AXIS REINSURANCE COMPANY'S APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS JOSHUA SUMMERS AND JULIA SUMMERS**<br><br>DATE: February 7, 2014<br>TIME: 10:00 a.m.<br>COURTROOM: 1 |

## NOTICE OF APPLICATION AND APPLICATION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 7, 2014 at 10:00 a.m. or as soon thereafter as this matter may otherwise be heard in Courtroom 1 of this Court, located on the 17th floor at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff AXIS Reinsurance Company ("AXIS") will and hereby does apply to this Court pursuant to Federal Rule of Civil Procedure 55(b)(2) for default judgment against Defendants Joshua Summers and Julia Summers, including $39,471.11 to reimburse AXIS for the fees and costs AXIS paid to the Summerses' defense counsel following entry of the judgment in the underlying *Straitshot* action that triggered the Policy's Unlawful Advantage Exclusion.

1    AXIS's Application is based on the accompanying memorandum of points and authorities,

2    the declarations of Ross Smith and Matthew Odalen, the record and pleadings on file, and upon

3    any and all other evidence or matter the Court may consider at or before the hearing of this

4    Application.

5

6    Dated: December 27, 2013                    Respectfully submitted,

7                                                TROUTMAN SANDERS LLP

8

9                                                By:  /s/ Ross Smith

10                                                    Terrence R. McInnis
                                                     Ross Smith
11                                                   *Attorneys for Plaintiff*
                                                     AXIS Reinsurance Company

12

13                              .

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# TABLE OF CONTENTS

**Page**

NOTICE OF APPLICATION AND APPLICATION ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.     INTRODUCTION ................................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................................. 1

    A. The Policy ................................................................................................................. 1

    B. The *Straitshot* Action ............................................................................................. 2

    C. The Present Coverage Action ................................................................................... 7

    D. The Summerses' Default ........................................................................................... 7

III.   ENTRY OF DEFAULT JUDGMENT IS PROPER ......................................................... 7

    A. Legal Standard .......................................................................................................... 7

    B. Proof Of Service ....................................................................................................... 8

    C. *Eitel* Factors ........................................................................................................... 8

IV.   CONCLUSION ................................................................................................................. 17

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Case No. 3:12-cv-02979-SC
20301636v2

- i -

APPLICATION FOR DEFAULT JUDGMENT
AGAINST JOSHUA SUMMERS AND JULIA
SUMMERS

# TABLE OF AUTHORITIES

Page

**CASES**

*Aerojet-General Corp. v. Transport Indem. Co.*,
  17 Cal. 4th 38 (1997) ......................................................................... 15

*Aldabe v. Aldabe*,
  616 F.2d 1089 (9th Cir. 1980) ............................................................... 7

*Board of Trustees v. Core Concrete Constr., Inc.*,
  No. 11-3259 SC, 2012 U.S. Dist. LEXIS 19778 (N.D. Cal. Feb. 16, 2012) ........................... 7

*California Casualty Management Co. v. Martocchio*,
  11 Cal. App. 4th 1527 (1992) ............................................................... 13

*Don Burton, Inc. v. Aetna Life & Casualty Co.*,
  575 F.2d 702 (9th Cir. 1978) ............................................................... 12

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986) ......................................................... 8, 15, 16

*F&H Construction v. ITT Hartford Insurance Company of the Midwest*,
  118 Cal.App.4th 364 (2004) ................................................................ 14

*Freightquote.com, Inc. v. Hartford Cas. Ins. Co.*,
  397 F.3d 888 (10th Cir. 2005) ............................................................. 12

*Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co.*,
  51 Cal. 2d 558 (1959) ..................................................................... 14

*Geddes v. United Fin. Group*,
  559 F.2d 557 (9th Cir. 1977) ............................................................... 8

*J.C. Penney Cas. Ins. Co. v. M.K.*,
  52 Cal. 3d 1009 (1991) .................................................................... 10

*Jarvis Christian College v. National Union Fire Ins. Co.*,
  197 F.3d 742 (5th Cir. 1999) ............................................................. 9, 10

*Kieburtz & Assocs. v. Rehn*,
  68 Wn. App. 260 (Wash. Ct. App. 1992) ...................................................... 14

*Kottler v. State*,
  963 P.2d 834 (Wash. 1998) ................................................................. 12

*Leingang v. Pierce County Medical Bureau*,
  930 P.2d 288 (Wash. 1997) ................................................................. 11

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1

**TABLE OF AUTHORITIES**
**(Continued)**

2

**Page**

3

*Liberty Mut. Ins. Co. v. Cont'l Ins. Co.*,
   159 Fed. Appx. 827 (10th Cir. 2005) .............................................................. 10-11

4

5

*Mez Indus., Inc. v. Pac. Nat'l Ins. Co.*,
   76 Cal. App. 4th 856 (1999) ............................................................................ 10

6

*Mitsui O.S.K. Lines, Ltd. v Allied Transp. Sys. (USA)*,
   2013 U.S. Dist. LEXIS 80580 (N.D. Cal., June 7, 2013) (Hon. Samuel Conti) .................... 16

7

8

*Okada v. MGIC Indem. Corp.*,
   823 F.2d 276 (9th Cir. 1986) ........................................................................... 15

9

10

*Olson v. Fed. Ins. Co.*,
   219 Cal. App. 3d 252 (1990) ........................................................................... 15

11

*Page Wellcome Professional Serv. Corp. v. Home Ins. Co.*,
   758 F. Supp. 1375 (D. Mont. 1991) ................................................................. 13

12

13

*Pepsico, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) ................................................... 8, 16, 17

14

15

*Plainview Milk Prods. Coop. v. Westport Ins. Corp.*,
   182 F. Supp. 2d 852 (D. Minn. 2001) ................................................................ 9

16

*Thola v. Henschell*,
   140 Wn. App. 70 (Wash. Ct. App. 2007) .......................................................... 14

17

18

*Trailer Marine Transport Corp. v. Chicago Ins. Co.*,
   791 F. Supp. 809 (N.D. Cal. 1992) ................................................................... 12

19

*Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*,
   990 F.2d 598 (11th Cir. 1993) .......................................................................... 11

20

21

*Wellcome v. Home Ins. Co.*,
   257 Mont. 354 (1993) ...................................................................................... 13

22

23

**STATUTES**

24

18 U.S.C. § 1030, subdiv. (e)(8) ....................................................................... 14

25

California Insurance Code section 533 ....................................................... passim

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- ii -

APPLICATION FOR DEFAULT JUDGMENT
AGAINST JOSHUA SUMMERS AND JULIA
SUMMERS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# TABLE OF AUTHORITIES
## (Continued)

**Page**

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4 ................................................................................................................. 8

Fed. R. Civ. P. 55 ..................................................................................................... 7, 17

10th Cir. R. 32.1(a) ........................................................................................................ 11

Black's Law Dictionary ................................................................................................. 13

Case No. 3:12-cv-02979-SC
20301636v2

- iii -

APPLICATION FOR DEFAULT JUDGMENT
AGAINST JOSHUA SUMMERS AND JULIA
SUMMERS

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## MEMORANDUM OF POINTS AND AUTHORITIES

I. **INTRODUCTION**

In this insurance coverage action, plaintiff AXIS Reinsurance Company seeks a judicial declaration that an insurance policy it issued to Telekenex, Inc. does not afford coverage for an underlying suit brought by the policyholder's former competitor captioned *Straitshot Communications, Inc. v. Telekenex, Inc. et al.*, No. C10-268 TSZ (W.D. Wash) (the "*Straitshot* action"). In addition, AXIS seeks reimbursement of uncovered **Loss** that AXIS paid under a reservation of rights. Defendants Joshua Summers and Julia Summers expressly waived service of summons yet have not filed an appearance or defended the action. *See* Smith Decl. at ¶¶ 3-9; ECF Document Nos. 16, 17. As such, the Clerk of the Court entered their default, and entry of default judgment is now appropriate. *See* Smith Decl. at ¶ 9; ECF Document No. 26. By this Application, AXIS respectfully requests that the Court enter a default judgment against the Summerses based on the well-pled allegations of AXIS's First Amended Complaint, and consistent with this Court's December 19, 2012 ruling on the merits of Declaratory Relief Counts I and II as against the defendants not in default.

II. **FACTUAL BACKGROUND**

A. **The Policy**

AXIS issued Privatus Policy RNN585200 to Telekenex, Inc. in San Francisco, California for the April 27, 2008 to April 27, 2009 Policy Period (the "Policy"). FAC ¶ 17. Subject to other terms and conditions, the Policy covers **Claims** for **Wrongful Acts** defined, in relevant part, as:

> any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by … any **Insured Individual** in their capacity as such; … or any matter claimed against any **Insured Individual** solely by reason of their serving in their capacity as such … .

FAC ¶ 61. **Insured Individual** means, in relevant part, any one or more natural persons who are past, present or future:

> individuals compensated by the **Policyholder** through wages, salary and/or commissions and whose labor or service is directed by the **Policyholder**, whether such labor or service is on a part-time, temporary, seasonal, or full-time basis …

APPLICATION FOR DEFAULT
JUDGMENT AGAINST JOSHUA SUMMERS
AND JULIA SUMMERS

FAC ¶ 62.  Telekenex, Inc. is the policyholder.  FAC ¶ 3.  Thus, the Policy does not cover **Loss** arising from acts, errors, or omissions of the individual defendants in capacities other than as employees of Telekenex, Inc.  FAC ¶ 63.

The Policy extends coverage to lawful spouses of **Insured Individuals** if the **Claim** against them is included solely by reason of "such spouse's status as a spouse of the **Insured Individual**" or "such spouse's ownership interest in property from which the claimant seeks recovery for the **Wrongful Acts** of the **Insured Individual**," but such coverage exists "only if and to the extent that such loss would be covered under this Policy if incurred by the **Insured Individual**."

Subject to all of its terms and conditions, the Policy affords coverage only for "**Loss**," which, subject to inapplicable exceptions for ERISA, IRS, and pension-related matters, does not include "fines, penalties, or taxes imposed by law[.]"  FAC ¶ 56; Policy Sections I, III.A.7.a.  The Policy is subject to certain exclusions including, as pertinent here, an Unlawful Advantage Exclusion for **Loss**

> based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving: … the gaining of any profit, remuneration, or advantage to which the **Insured** was not legally entitled … if evidenced by any judgment …

FAC ¶ 41.  "**Defense Costs**" or "reasonable and necessary legal fees and expenses … incurred by or on behalf of the **Insureds** in defending, settling, appealing or investigating **Claims**," are an element of "**Loss**," as defined in the Policy.  FAC Ex. A, Policy Sections III.A.7, III.A.2. The Policy also excludes **Loss** arising from any Claim made against any Insured for "damage to or destruction of any tangible property including loss of use thereof[.]"  FAC ¶ 59; Policy Section IV.A.3, as amended by End. No. 1.  Also, California Insurance Code section 533 is an implied exclusionary clause read into all insurance policies governed by California law, which bars insurance coverage for intentional and willful acts of the insured.  FAC ¶ 48.

**B.**     **The *Straitshot* Action**

On or about February 5, 2009, Straitshot Communications, Inc. initiated the underlying *Straitshot* action.  FAC ¶¶ 11, 19.  At the time of trial, the Fifth Amended Complaint was the

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

operative pleading, which included the following allegations.  The *Straitshot* action arises out of

unlawful schemes agreed to and perpetrated by the Telekenex Defendants, including Joshua

Summers, in order to abscond with, and ultimately destroy, the business of Straitshot for their

benefit.  Straitshot was a managed network service provider to small and medium-sized

companies that enabled enterprises to share mission-critical data, voice and hosted applications

between multiple locations.  Telekenex was a competitor.  Beginning in October 2008 and

continuing through February 2009, Telekenex made overtures to Straitshot suggesting that the

companies consider combining their resources.  Meanwhile, Straitshot's Regional Sales Directors,

Mark Prudell and Mark Radford, were secretly diverting business opportunities to Telekenex and

providing Telekenex with confidential information belonging to Straitshot, including customer

lists, contact, circuit diagrams, and pricing information.  Mark Prudell, Mark Radford, and

Telekenex solicited Straitshot's customers and made false representations that Straitshot was

going out of business in an effort to induce them to switch their service to Telekenx.  Mark

Prudell and Mark Radford also successfully solicited Straitshot's engineers to leave Straitshot and

join Telekenex, which resulted in the loss of Straitshot's entire engineering department.

Straitshot's Director of Engineering, Joshua Summers, used Straitshot's equipment and

information to facilitate the transfer of Straitshot's customer circuits to Telekenex' network.  FAC

¶ 22.

Straitshot's Fifth Amended Complaint also included as defendant Joshua Summers'

spouse as part of the marital community allegedly liable.  FAC ¶ 23.  Julia Summers is Josh

Summers' spouse.  FAC ¶ 8.

On February 6, 2012, the jury returned a verdict finding in Straitshot's favor and against

Joshua Summers on: breach of the duty of loyalty, and interference with Straitshot's contractual

relations with Straitshot's customers.  The jury awarded $6,490,000 against the Telekenex

Defendants based on the total destruction of Straitshot Communications, Inc.  FAC ¶ 25.

On February 23, 2012, the Court issued Findings of Fact and Conclusions of Law in

which it found that there was substantial evidence presented at trial to support the jury's findings.

The Court found that although Straitshot had authorized Summers and others to access its systems

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    in order to assist Straitshot customers, Straitshot demonstrated at trial that their conduct went well

2    beyond what was authorized by Straitshot, including using its access to Straitshot's systems to

3    encourage Straitshot customers to move to Telekenex.  The Court also found that Julia Summers

4    was a proper defendant because judgments holding individual defendants liable for intentional

5    torts committed by one spouse for the benefit of the marital community are judgments against the

6    individual defendants' marital communities. FAC ¶ 26.   Accordingly, on February 23, 2012, the

7    Court entered judgment against Joshua Summers, Julia Summers, and the other Telekenex

8    Defendants, consistent with the jury's verdict and the Court's Findings of Fact and Conclusions

9    of Law.  FAC ¶ 27.

10            On March 6, 2012, the Court issued Spoliation Findings of Fact and Conclusions of Law

11   relating to a motion Straitshot filed seeking sanctions against the Summerses, Telekenex, Inc. and

12   others.  The Court made the following findings and conclusions.

13        •   Joshua Summers was part of Straitshot's management team in 2008.  Mr.

14            Summers resigned from Straitshot on January 27, 2009.  Between January 27 and

15            February 5, 2009, Straitshot requested that Mr. Summers provide assistance to

16            Straitshot customers, which he did.  Mr. Summers was paid by Straitshot during

17            this time.  Mr. Summers also worked for Telekenex to transition Straitshot

18            customers to Telekenex during this time.  Mr. Summers drafted the script used by

19            Telekenex to encourage Straitshot customers to migrate to Telekenex.  At all times

20            material after February 6, 2009, Mr. Summers worked exclusively for and was

21            engaged in the performance of duties required of him by Telekenex.

22        •   On February 11, 2009, Mr. Summers returned the majority of the Straitshot

23            property in his possession to Straitshot, but maintained possession of his Straitshot

24            laptop, which contained confidential Straitshot customer information and data that

25            showed how each Straitshot customer's network was built, the kind of circuits

26            each Straitshot customer had, the IP addresses of the Straitshot customer circuits,

27            when Straitshot had installed its customer circuits, the underlying carriers for the

28            Straitshot customer circuits, the amount of Straitshot monthly revenue derived

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

from each of Straitshot customers, and other confidential information belonging to Straitshot.

- On February 13, 2009, Straitshot obtained a second temporary restraining order ("TRO") in King County Superior Court against Telekenex, Inc. and its employees, requiring Summers to produce the laptop. On that day, Summers contacted Straitshot CFO, Phil Howe, and told him that the laptop was in the Straitshot storage locker. However, on February 14, 2009, Summers used the laptop. Summers contacted Mr. Howe on February 15, 2009 to confirm that Howe had received "everything" in regard to equipment. On February 16, 2009, Summers signed a declaration under oath stating that he returned all the hardware he had in his possession on February 12, 2009. However, on that same day, Summers undertook various activities on the laptop including, but not limited to, installing Windows Vista and partitioning the laptop's hard drive, which had the effect of making deleted documents difficult or impossible to recover. On February 17, 2009, Summers created a new Telekenex folder on the laptop containing Straitshot business information.

- On February 18, 2009, an attorney for Straitshot emailed Telekenex about the missing laptop; the email was forwarded to Summers that day. Also on February 18, 2009, Straitshot obtained an amended TRO against Telekenex and its employees requiring Summers to make a diligent search for and produce the laptop, and not to tamper with or alter the laptop. Summers had actual knowledge of the amended second TRO on February 18, 2009.

- On February 19, 2009, Summers ran a program on the laptop, known as "RegEdit," which had the effect of permanently destroying or modifying evidence of external devices attached to the laptop, records of deleted files, and other user activity. Summers sent Howe a text message on March 9, 2009 stating that he went through his closet and "found the laptop bag behind a box." Summers delivered the laptop on March 13, 2009. On March 18, 2009, the King County

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    Superior Court issued an order finding that the Defendants failed to timely deliver

2    the laptop and that they had violated the amended second TRO.

3    • On August 3, 2009, Summers was deposed and denied using the laptop for

4    Telekenex activities once he began working at Telekenex.  Summers claimed that

5    he had stored the laptop along with his other computer equipment and had no

6    recollection of using it during the time he worked for Telekenex.  On October 7,

7    2010, Straitshot computer forensic expert, Erik Laykin, completed a report

8    uncovering numerous occasions between February 16 and March 5, 2009 where

9    Summers used the laptop and destroyed files.  For example, the day after the TRO

10   was entered on February 13, 2009, a search was run for "data" and "forensic

11   tools."  The Court found that Summers' use of the Straitshot laptop during the

12   period of February 18, 2009 through March 5, 2009 was "a deliberate effort to use

13   and then conceal his use of the Straitshot laptop."

14   • On November 16, 2010 (after the issuance of Laykin's report), Summers was

15   deposed for the second time.  During this deposition, and at trial, Summers

16   testified that he mistakenly used the laptop thinking it was his Telekenex laptop.

17   Summers also testified, however, that he continued using the laptop even after he

18   discovered it was the wrong laptop.

19   The Court found Summers' testimony concerning his use of the laptop at his depositions and trial

20   "not credible."  The Court further found that (1) Summers' use of the Straitshot laptop during the

21   period of February 18, 2009 through March 5, 2009 "was a deliberate effort to use and then

22   conceal his use of the Straitshot laptop"; (2) Summers "intentionally and wrongfully used the

23   Straitshot laptop after the TRO dated February 13, 2009"; (3) Summers "knew that he was in

24   possession of the laptop and deliberately and in bad faith made substantial alterations and

25   deletions to the laptop in violation of the February 13, 2009 and February 18, 2009 [TROs]"; and

26   (4) Summers "failed to timely deliver the Straitshot laptop and intentionally violated the

27   Amended 2nd TRO[.]"   The Court also found that "the use of the laptop and deletion of files was

28   conducted in furtherance of the business of Telekenex."  As a result, the Court sanctioned Joshua

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

APPLICATION FOR DEFAULT JUDGMENT
AGAINST JOSHUA SUMMERS AND JULIA
SUMMERS

1    and Julia Summers for Mr. Summers' violation of the temporary restraining orders, destruction of

2    evidence on the laptop, and failure to produce responsive documents.  Under the respondeat

3    superior doctrine, the Court also sanctioned Telekenex for Summers' destruction of evidence on

4    the laptop and failure to produce responsive documents.

5          **C.    The Present Coverage Action**

6          AXIS filed this action on June 8, 2012, for a declaratory judgment that the Policy does not

7    cover any losses incurred by the Telekenex Defendants, including the Summerses, in connection

8    with the *Straitshot* action.  *See* ECF Doc. Nos. 1, 3.  The operative First Amended Complaint in

9    this action asserts eight counts:  (I) Declaratory Relief – Unlawful Advantage Exclusion; (II)

10   Declaratory Relief – Insurance Code §533; (III) Declaratory Relief – No Coverage for Spoliation

11   Penalties; (IV) Declaratory Relief – No Coverage for Breach of Duty of Loyalty; (V) Declaratory

12   Relief – No Coverage for Non-Insured IXC Holdings; (VI) Declaratory Relief – Allocation for

13   Uncovered Amounts; (VII) Equitable Indemnity; and, (VIII) Restitution and Reimbursement.  For

14   purposes of this Application, all but Count V (which solely concerns IXC Holdings, Inc.) are

15   pertinent.

16         **D.    The Summerses' Default**

17         The Summerses' defaults have been entered.  *See* ECF Doc. No. 26.  In the meantime,

18   AXIS has obtained partial summary judgment on Counts I and II of its First Amended Complaint

19   against all defendants who have appeared in the case.  *See* ECF Doc. No. 68.

20   **III.    ENTRY OF DEFAULT JUDGMENT IS PROPER**

21         **A.    Legal Standard**

22         After entry of default, the Court may enter a default judgment.  Fed. R. Civ. P. 55(b)(2).

23   Its decision whether to do so, while discretionary, *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th

24   Cir. 1980), is guided by several factors.  As a preliminary matter, the Court must "assess the

25   adequacy of the service of process on the party against whom default judgment is requested."

26   *Board of Trustees v. Core Concrete Constr., Inc.*, No. 11-3259 SC, 2012 U.S. Dist. LEXIS

27   19778, at *3 (N.D. Cal. Feb. 16, 2012).  If the Court determines that service was sufficient, it

28   should consider whether the following factors support the entry of default judgment: (1) the

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

possibility of prejudice to the plaintiff; (2) the merits of a plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."  *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

### B.     Proof of Service

Here, there is no question about the adequacy of service of process as Mr. and Mrs. Summers each signed and returned written waivers after receiving a copy of AXIS's original and first amended complaints.  *See* Smith Decl. at ¶¶3-7; ECF Doc. Nos. 16, 17.  "When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver."  F.R.C.P. Rule 4(d)(4).  Accordingly, service of process was adequate.

### C.     *Eitel* Factors

The Ninth Circuit's *Eitel* factors weigh heavily in favor of entering default judgment against the Summerses.

As to the first *Eitel* factor, if this Application for default were denied, AXIS would be prejudiced because it would be without other recourse.  *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse").  Accordingly, the first factor weighs in favor of entering a default judgment.

The second and third *Eitel* factors relate to whether the facts set forth in the complaint sufficiently state claims for relief.  AXIS's First Amended Complaint satisfies these factors, as well.

With respect to Count I (Declaratory Relief – Unlawful Advantage Exclusion), as well as Count VI (Declaratory Relief – Allocation for Uncovered Amounts) and reimbursement Counts VII and VIII, the allegations demonstrate that the Policy's Unlawful Advantage Exclusion

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 8 -

applies, which bars coverage for **Loss**

> based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving: … the gaining of any profit, remuneration, or advantage to which the **Insured** was not legally entitled … if evidenced by any judgment …

FAC ¶ 41.  As alleged in AXIS's First Amended Complaint, the amounts awarded in the *Straitshot* action are based upon, arise out of, directly or indirectly result from, are in consequence of, or involve the gaining of any profit, remuneration, or advantage to which the Insureds were not legally entitled.  The underlying judgment confirms that Mr. Summers (along with the other Telekenex Defendants) gained advantage to which he was not legally entitled by, for example, migrating Straitshot customers to Telekenex through improper means and driving a competitor out of business.  At trial, the Telekenex Defendants did not dispute that they had some success in migrating Straitshot customers to Telekenex (although they unsuccessfully asserted they were legally entitled to do so).  Moreover, the judgment confirms that the Telekenex Defendants' conduct was a substantial, if not the sole, reason Straitshot went out of business.  All of the Telekenex Defendants, including Mr. Summers, gained some profit, remuneration or advantage by migrating Straitshot customers to Telekenex and driving Straitshot out of business – whether in the form of commissions, income, increased market value, employment opportunities, or otherwise.  FAC ¶¶ 42-43.

The term "advantage" is a broad term that encompasses any gain or benefit, including an *opportunity* to profit.  *See, e.g., Jarvis Christian College v. National Union Fire Ins. Co.*, 197 F.3d 742, 748-49 (5th Cir. 1999) ("The [term 'advantage'] does not mean a balance-sheet profit; rather, it encompasses any gain or benefit, such as an *opportunity* to make a profit ….")  The exclusion applies where an Insured takes something of value that does not belong to them, even if they then give it away to a business associate to curry favor.  *See, Plainview Milk Prods. Coop. v. Westport Ins. Corp.*, 182 F. Supp. 2d 852, 854 (D. Minn. 2001) ("The claim at issue is based upon an allegation that Plainview, the insured, obtained money to which it was not legally entitled.  Thus, on its face, Exclusion A applies."); *Id.* at 855 ("Plainview is a nonprofit entity which, by definition, cannot enjoy a profit; indeed, Plainview did not retain the money it overcharged

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 9 -

1   Marigold, but, instead, disbursed those additional funds to its member farmers.… Yet even if the

2   overcharged amount does not constitute a 'profit' …, it certainly constitutes an 'advantage.'

3   Plaintiff's ability to provide its membership with dividends is, without question, a corporate

4   advantage.")  Mr. Summers stood to personally gain and shared in the advantage gained by using

5   Straitshot's own equipment and system to shift some if not all of Straitshot's entire customer base

6   over to Telekenex.  *Jarvis Christian College,* at 751-52 ("Cosby gained measurable personal

7   advantages from a financial and business perspective, including continuation of a steady monthly

8   salary and the opportunity to make a handsome profit.")

9        Accordingly, because the judgment evidences that Joshua Summers was not legally

10  entitled to the foregoing advantage gained, and the Policy only extends coverage to Julia

11  Summers to the extent that her husband's liability is covered, the Exclusion precludes coverage

12  for the related **Loss** incurred by the Summerses in connection with the *Straitshot* action.  Such

13  excluded **Loss** includes all of the related defense fees and costs that AXIS paid under a

14  reservation of rights, for which AXIS is now entitled to reimbursement.  FAC ¶¶ 71-72, 76-78,

15  81-84.

16       With respect to Count II (Declaratory Relief – Insurance Code section 533), the

17  allegations also establish that any coverage for the Summerses is precluded by California

18  Insurance Code section 533 (the "Willful Acts Exclusion"), which provides that an insurer is not

19  liable for a "wilful act of the insured."  Cal. Ins. Code § 533 (2012).  This is "an implied

20  exclusionary clause which by statute is to be read into all insurance policies."  *J.C. Penney Cas.*

21  *Ins. Co. v. M.K.*, 52 Cal. 3d 1009, 1019 (1991).

22       A "wilful act" includes an act "intentionally performed with knowledge that damage is

23  highly probable or substantially certain to result" or an intentional and wrongful act in which "the

24  harm is inherent in the act itself."  *Mez Indus., Inc. v. Pac. Nat'l Ins. Co.*, 76 Cal. App. 4th 856,

25  876 (1999).  Accordingly, the Willful Acts Exclusion precludes coverage where, as here, liability

26  is based on a knowing, intentional and purposeful violation of another's legal rights, or

27  inducement that others violate such rights.  *See, e.g., Mez Indus.,* 76 Cal. App. 4th at 876-77

28  (Willful Acts Exclusion precludes coverage for inducement of patent infringement); *Liberty Mut.*

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 10 -

1   *Ins. Co. v. Cont'l Ins. Co.*, 159 Fed. Appx. 827, 834 (10th Cir. 2005) (unpublished) (court held

2   that California Ins Code § 533 applied to claim that Insured tried to drive competitor out of

3   business; "7-Up's conduct was a willful attempt to drive Geyser out of business and increase 7-

4   Up's profits from the sale of a copied product. … 7-Up intentionally used Geyser's confidential

5   information to drive Geyser's products out of a specific market and use its own products as a

6   replacement.  The damages to Geyser and the Vances were inherent in 7-Up's desire to 'kill'

7   Geyser products and replace them with Aqua Ice.")[1]

8         The jury verdict and judgment in the *Straitshot* action found Mr. Summers liable for

9   intentional interference with Straitshot's contractual relations with its customers.  As the jury was

10  instructed, such liability could only be imposed if they found (among other things) that defendant

11  "knew of the existence of the contract or business relationship;" that defendant "intentionally

12  induced or caused a breach of the contract or the termination of the business relationship;" and

13  that "defendant's conduct was for an improper purpose or by improper means[.]  Thus, in finding

14  liability on this cause of action, the jury necessarily found that Mr. Summers acted willfully and

15  intentionally in causing injury to Straitshot.  FAC ¶ 50.  The jury necessarily found purposeful

16  misconduct similar to that which convinced the court in *Mez Industries* that the Willful Acts

17  Exclusion necessarily barred coverage for inducement to patent infringement.  Liability for

18  intentional interference "requires an improper objective or the use of wrongful means that in fact

19  cause injury to the person's contractual relationship."  *Leingang v. Pierce County Medical*

20  *Bureau*, 930 P.2d 288, 300 (Wash. 1997).  Exercising one's legal interests in good faith is not

21  improper interference.  *Id*.  Obviously, damage would flow in the form of losses to Straitshot and

22  gains to the Insureds through the sale of Telekenex' services to Straitshot's customers, which was

23  precisely the asserted goal.  *Also see, Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.*,

24  990 F.2d 598, 605 (11th Cir. 1993) ("we conclude that Atkinson's intentional interference claim

25  fell within the policy's intentional acts exclusion.  The complaint alleges that SCI intentionally

26  interfered with Atkinson's business and contractual relations, and Atkinson could not have

27

28        [1] "Unpublished decisions are not precedential, but may be cited for their persuasive
     value." 10th Cir. R. 32.1(a).

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

APPLICATION FOR DEFAULT JUDGMENT
AGAINST JOSHUA SUMMERS AND JULIA
SUMMERS

1    succeeded on the claim on any lesser showing of intent."); *Freightquote.com, Inc. v. Hartford*

2    *Cas. Ins. Co.*, 397 F.3d 888, 894 (10th Cir. 2005) ("the only inference from the totality of

3    circumstances: Freightquote intended to strong arm Gateway and interfere with Gateway's

4    contractual and business relationships with its customers.  There is no plausible claim here that

5    Freightquote acted in good faith.  In short, Freightquote's conduct can only be understood as

6    deliberate interference with Gateway's customer relations and is, therefore, excluded from

7    insurance coverage.")

8         In finding that Mr. Summers and the others were "acting in concert," the jury necessarily

9    found that they "consciously *act[ed]* together in an unlawful manner."  *Kottler v. State*, 963 P.2d

10   834, 841 (Wash. 1998).  For purposes of the Willful Acts Exclusion, it is not necessary that the

11   Insured carry out every single act involved in the unlawful plan or unlawful objectives to which

12   the jury found the defendants agreed.  *See, e.g., Don Burton, Inc. v. Aetna Life & Casualty Co.*,

13   575 F.2d 702, 705-706 (9th Cir. 1978) (insurer was entitled to rely on arson-based defense and

14   the Willful Acts Exclusion if insured aided and abetted arson, even if the insured did not

15   personally start the fire; "Unsurprisingly, the notion that a defense of arson can be defeated by a

16   failure to prove that the insured himself was the incendiarist is not supported by any authority to

17   which our attention has been drawn and we have been unable to find any."); *Trailer Marine*

18   *Transport Corp. v. Chicago Ins. Co.*, 791 F. Supp. 809, 812 (N.D. Cal. 1992) (insurer entitled to

19   summary judgment that Willful Acts Exclusion barred coverage for insured's liability in

20   connection with antitrust conspiracy).

21        In ruling on AXIS's initial Motion for Partial Summary Judgment, this Court previously

22   ruled that although Insurance Code section 533 bars coverage for the underlying judgment

23   rendered on the causes of action of Straitshot's Fifth Amended Complaint against the defendants

24   not in default, it does not render Telekenex, Inc.'s *respondeat superior* liability for the spoliation

25   sanctions award uninsurable.  A different conclusion is warranted as to Mr. Summers' liability for

26   those sanctions, however, as his liability is direct – not vicarious – and is based on express fact

27   findings of willful misconduct.  *See* FAC ¶52 (Summers "intentionally and wrongfully used the

28   Straitshot laptop after the TRO," Summers "deliberately and in bad faith made substantial

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

APPLICATION FOR DEFAULT JUDGMENT
AGAINST JOSHUA SUMMERS AND JULIA
SUMMERS

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1 alterations and deletions to the laptop in violation of the [TROs]," and the trial court awarded

2 sanctions citing its inherent powers to do so where a party or counsel acts "in bad faith,

3 vexatiously, wantonly, or for oppressive reasons."); *California Casualty Management Co. v.*

4 *Martocchio*, 11 Cal. App. 4th 1527, 1533 (1992) ("it is clear that Insurance Code section 533 and

5 the public policy it represents bar the attempt to shift a court-imposed sanctions award to an

6 insurer.")

7        Accordingly, because the conduct underlying Joshua Summers' liability in the *Straitshot*

8 action was "willful" within the meaning of Insurance Code section 533, and the Policy extends

9 coverage to Julia Summers' spousal liability only if her husband's liability is covered, Insurance

10 Code section 533 precludes coverage for the amounts awarded against the Summerses in the

11 *Straitshot* action.

12        While the foregoing is a sufficient basis to conclude that the Policy affords no coverage

13 for any of the amounts awarded against the Summerses in the *Straitshot* action, Counts III and IV

14 of AXIS's First Amended Complaint also have merit.

15        As set forth in Count III of the First Amended Complaint, fines or penalties generally do

16 not constitute covered "**Loss**" as defined by the Policy.  For this reason too -- in addition to

17 Insurance Code section 533 -- the Policy affords no coverage for the spoliation sanctions.  Courts

18 that have considered similar policy provisions have acknowledged that court-ordered sanctions

19 are uncovered "fines [or] penalties" within the unambiguous meaning of such policy provisions.

20 *See Page Wellcome Professional Serv. Corp. v. Home Ins. Co.*, 758 F. Supp. 1375, 1377-79 (D.

21 Mont. 1991) (a sanction for trial misconduct is an uncovered fine when the policy defines insured

22 "damages" to "not include fines or statutory penalties"); *Wellcome v. Home Ins. Co.*, 257 Mont.

23 354, 358 (1993) ("Here, the trial court imposed the sanctions for Wellcome's violation of certain

24 of its orders during trial, pursuant to its inherent authority.  The sanctions were a penalty or

25 punishment for Wellcome's misconduct … .  Black's Law Dictionary (4th Ed. Rev.) defines a fine

26 as a penalty … .  In our view, this is the commonly understood and clear meaning of the word

27 "fine.").

28        Also, the underlying acts of spoliation involved withholding and tampering with a laptop

- 13 -

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  computer owned by Straitshot; if the award of sanctions was **Loss**, the Policy would exclude it as

2  **Loss** arising from any Claim made against any Insured for "damage to or destruction of any

3  tangible property including loss of use thereof[.]"  The laptop is tangible property and the

4  substantial alterations and deletions the Court found made constitute damage to the laptop within

5  the plain and ordinary meaning of the term.  The federal computer fraud statute, for instance,

6  which makes it an offense to cause damage to a protected computer, acknowledges that damage

7  includes "any impairment to the integrity or availability of data, a program, a system, or

8  information." 18 U.S.C. § 1030, subdivision (e)(8).[2]

9       In addition, as set forth in Count IV of the First Amended Complaint, Mr. Summers is not

10  insured under the Policy in any capacity other than as an employee of Telekenex, Inc.  The Policy

11  covers certain **Loss** arising from acts, errors, omissions, etc. by the **Insured Individual** "in their

12  capacity as such" or matters claimed against an **Insured Individual** "solely by reason of their

13  serving in their capacity as such[.]"  Policy Section III.B.5.  But the underlying duty of loyalty

14  allegedly breached is necessarily based in his capacity as an employee of Straitshot -- not

15  Telekenex.  *See, e.g.*, *Thola v. Henschell*, 140 Wn. App. 70, 86 n.7 (Wash. Ct. App. 2007) (the

16  duty of loyalty prohibits an employee, *before the end of her employment*, from soliciting her

17  employer's customers for her new employer); *Kieburtz & Assocs. v. Rehn*, 68 Wn. App. 260, 265

18      [2] The exclusion in the Policy at issue is not limited to "physical" damage, which California
19  courts have acknowledged is an important factor.  *Compare, Geddes & Smith, Inc. v. St. Paul
    Mercury Indem. Co*., 51 Cal. 2d 558, 564 (1959) (where the policy covered damages because of
20  "injury to or destruction of property, including loss of use thereof," court held that presence of
    defective doors constituted "injury" measured by the diminution in the market value of the
21  building, or the cost of removing the defective component and restoring the building plus any loss
    from deprival of use, whichever is the lesser); *with F&H Construction v. ITT Hartford Insurance
22  Company of the Midwest*, 118 Cal.App.4th 364, 374 (2004) (where, by contrast, the policy
    defined property damage as "physical injury to or destruction of tangible property," the court
23  found no coverage for incorporation of defective component, distinguishing *Geddes* based on the
    absence of the "physical" qualifier in the policy language it considered: "Prior to 1973, the
24  standard CGLI policies defined 'property damage' as 'injury to or destruction of tangible
    property.'  Applying that definition, a number of courts held that coverage for 'property damage'
25  includes the diminution in the value of the building resulting from the incorporation of a defective
    component.  Beginning in 1973, the definition of 'property damage' in the standard CGLI policy
26  was changed to 'physical injury to or destruction of tangible property.'  Giving this new
    definition its plain and ordinary meaning, the majority of courts hold that it does not cover
27  economic damages.") (Original emphasis; internal citations omitted.)
28

Case No. 3:12-cv-02979-SC                                    APPLICATION FOR DEFAULT JUDGMENT
20301636v2                              - 14 -               AGAINST JOSHUA SUMMERS AND JULIA
                                                             SUMMERS

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

(Wash. Ct. App. 1992) (holding that "*during the period of his or her employment*, an employee is not 'entitled to solicit customers for [a] rival business . . .' or to act in direct competition with his or her employer's business.") (italics added).  Because Mr. Summers' liability is necessarily based on his capacity as a Straitshot employee, not his capacity as an Insured Individual, the Policy does not cover him for any losses related to Straitshot's breach of the duty of loyalty cause of action. *See, e.g., Olson v. Fed. Ins. Co.*, 219 Cal. App. 3d 252, 261 (1990) (an insurer was entitled to summary judgment where the policy covered an individual in his capacity as a director of the policyholder and the underlying claim was based on his capacity with a different company; "his allegations were directed toward plaintiff's asserted interference with Certified Egg as part owner of Certified Egg, rather than acts undertaken as a director of [policyholder] Olson Farms.")

Nor does the Policy cover Mrs. Summers' related spousal liability, which would be covered only if and to the extent her husband's liability were covered.

In sum, AXIS does not seek anything by way of this Application that it is not entitled to on the merits.  The Policy plainly does not afford coverage for the amounts incurred by the Summerses in connection with the underlying *Straitshot* Action, whether in the form of the judgment, the sanctions, or the defense expenses.  And having properly reserved its rights, AXIS is entitled to reimbursement for defense fees and costs excluded by the Unlawful Advantage Exclusion.[3]  *See, e.g.*, *Okada v. MGIC Indem. Corp.*, 823 F.2d 276, 282 (9th Cir. 1986) ("MGIC may, of course, in payment of costs on covered claims as those costs come due, reserve its rights pursuant to the contract should the claims ultimately prove uncovered. … The directors have a right to the contemporary payment of costs.  They have no right, however, to the unconditional

---

[3] While the Court previously found that the Unlawful Advantage Exclusion did not preclude coverage for the spoliation sanctions, there was never potential coverage for spoliation for the reasons in Count III of AXIS's First Amended Complaint discussed in greater detail above.  Accordingly, even if certain fees and costs could arguably be allocated to that, AXIS is entitled to reimbursement of them.  *See, e.g., Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal. 4th 38, 69 (1997) ("the insurer may obtain reimbursement from the insured for defense costs that can be allocated solely to a part of a claim that is not even potentially covered.")  Thus, the fact that this Court has found the Unlawful Advantage Exclusion inapplicable to the spoliation sanctions does not mean that the attorney's fees and costs must be broken out to remove time and costs spent addressing the sanctions motion.

1   payment of costs, when those conditions were clearly and unequivocally expressed. …  MGIC

2   may reserve its rights under the agreement … for the return of advances should the claims

3   ultimately prove to be uncovered.")

4       The fourth *Eitel* factor considers the sum of money at stake.  Where, as here, the amount

5   sought is reasonable and consistent with the amount shown to be owed, this factor weighs in favor

6   of the entry of default judgment.  *See, e.g., Mitsui O.S.K. Lines, Ltd. v Allied Transp. Sys. (USA)*,

7   2013 U.S. Dist. LEXIS 80580, at *7-8 (N.D. Cal., June 7, 2013) (Hon. Samuel Conti).  Having

8   properly reserved its rights, AXIS is entitled to reimbursement for defense fees and costs

9   excluded by the Unlawful Advantage Exclusion.  The total amount sought is $39,471.11, which,

10  as set forth in the accompanying Declaration of Matthew Odalen, is based on only those fees and

11  costs that AXIS paid to counsel retained for the Summerses alone following entry of judgment in

12  the underlying *Straitshot* action.  The amount sought is a small fraction of the total amount AXIS

13  paid to defend the underlying *Straitshot* action and is at least consistent with the amount owing

14  AXIS.

15      The fifth *Eitel* factor likewise weighs in favor of a default judgment, because minimal

16  possibility of a dispute regarding the material facts exists.  This is because, first of all, upon entry

17  of default, all well-pleaded facts in the complaint are taken as true, except those relating to

18  damages.  *See PepsiCo*, at 1177.  Furthermore, consistent with the relief AXIS is requesting

19  against the Summerses in this Application, the Court has already granted partial summary

20  judgment in AXIS's favor against the Telekenex Defendants not in default on Counts I and II,

21  having determined that the material facts were not in dispute.  *See* ECF Doc. No. 68 at p. 14 ("the

22  $6.49 million judgment against the Telekenex Defendants amounts to 'a loss … arising out of …

23  the gaining of a[] profit … or advantage to which [the Telekenex Defendants] w[ere] not legally

24  entitled.'  The Telekenex Defendants' contention that they did not profit or gain an advantage

25  from the misappropriation of a competitor's customers is simply not plausible."), and p. 24 ("In

26  this case, the Telekenex Defendants' actions come within the scope of 'wilful acts,' as that term

27  has been defined in the context of section 533.  The jury found each and every Telekenex

28  Defendant liable for interference with contractual relations. …  Accordingly, … the jury

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

APPLICATION FOR DEFAULT JUDGMENT
AGAINST JOSHUA SUMMERS AND JULIA
SUMMERS

1   necessarily found that they acted intentionally with an improper purpose or by improper means

2   and that their actions caused Straitshot harm.  As the Telekenex Defendants' conduct involved

3   misappropriating Straitshot's customers, Straitshot's damages were highly probable or

4   substantially certain.")[4]

5           The sixth *Eitel* factor similarly favors entry of a default judgment.  Defendants expressly

6   waived service and then did not file an answer or otherwise defend the claims against them, and

7   they have not since made any assertion of excusable neglect.

8           Finally, although decisions on the merits are favored, Rule 55(b) allows entry of default

9   judgment in situations such as this, where the defendant has declined to litigate.  *See Pepsico*, at

10  1177 ("the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone,

11  is not dispositive.  Moreover, Defendant's failure to answer Plaintiffs' Complaint makes a

12  decision on the merits impractical, if not impossible.") (Internal cites and quotations omitted).

13          Accordingly, a default judgment against the Summerses is proper here.

14  **IV.    CONCLUSION**

15          WHEREFORE, for the foregoing reasons and pursuant to Federal Rule of Civil Procedure

16  55(b)(2), Plaintiff AXIS Reinsurance Company respectfully moves this Court to enter default

17  judgments against Defendants Joshua Summers and Julia Summers, including a monetary award

18  of $39,471.11.

19

20  Dated: December 27, 2013                   Respectfully submitted,

21                                              TROUTMAN SANDERS LLP

22

23  By:  _/s/ Ross Smith_____
                                                Terrence R. McInnis
24                                              Ross Smith
                                                *Attorneys for Plaintiff*
25                                              AXIS Reinsurance Company

26

27      [4] In the Court's December 19, 2012 Order, the term "Telekenex Defendants" collectively
    referred to defendants Telekenex, Inc., Anthony Zabit, Karen Salazar, Brandon Chaney, Deanna
28  Chaney, and IXC Holdings, Inc.  See ECF Doc. No. 68 at p. 1.

APPLICATION FOR DEFAULT JUDGMENT
AGAINST JOSHUA SUMMERS AND JULIA
SUMMERS

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545