IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXIS REINSURANCE COMPANY, | Case No. 12-2979 SC |
| Plaintiff, | ORDER GRANTING MOTIONS FOR <u>DEFAULT JUDGMENT</u> |
| v. | |
| TELEKENEX, INC.; ANTHONY ZABIT; KAREN SALAZAR; BRANDON CHANEY; DEANNA CHANEY; MARK PRUDELL; JOY PRUDELL; MARK RADFORD; NIKKI RADFORD; JOSHUA SUMMERS; JULIA SUMMERS; IXC HOLDINGS, INC.; STRAITSHOT COMMUNICATIONS, INC.; and STRAITSHOT RC, LLC, | |
| Defendants. | |

## I.  INTRODUCTION

Plaintiff Axis Reinsurance Company ("Axis") now moves for entry of default judgment against Defendants Mark and Nikki Radford, Joshua and Julia Summers, and Mark and Joy Prudell (collectively, "Defendants in default").  ECF No. 128 ("Prudell DJ Mot."), 129 ("Radford DJ Mot."), 130 ("Summers DJ Mot.").[1] Defendants in default have not opposed the motions.  The Court

---

[1] At the Court's request, Axis also submitted a supplemental brief on personal jurisdiction.  ECF No. 138 ("Supp. Br.").

finds the matter appropriate for determination without oral argument per Civil Local Rule 7-1(b), and GRANTS the motions.

**II. BACKGROUND**

    **A. Factual Background**

This case is an insurance coverage dispute arising out of an underlying action captioned <u>Straitshot Communications, Inc. v. Telekenex, Inc., et al.</u>, No. C10-268 TSZ (W.D. Wash) (the "<u>Straitshot</u> action"). ECF No. 15 ("FAC"). In the <u>Straitshot</u> action, Straitshot alleged that Telekenex stole its trade secrets and confidential customer information and covered up this theft through the destruction of evidence. In addition to Telekenex, Straitshot sued Mr. Zabit, Telekenex's president, Mr. Chaney, Telekenex's Chief Executive Officer ("CEO"), and Messrs. Prudell, Radford, and Summers, former Straitshot employees who allegedly funneled business opportunities to Telekenex before resigning from Straitshot. Straitshot also sued the individual defendants' spouses, including Mss. Prudell, Radford, and Summers, on the ground that the other individual defendants' unlawful acts were taken on behalf of the marital community.

The <u>Straitshot</u> action ultimately went to trial. The jury returned a $6.49 million verdict in favor of Straitshot, finding for Straitshot on its claims for: (1) breach of contract against Messrs. Prudell and Radford; (2) breach of the duty of loyalty against Messrs. Prudell and Summers; (3) interference with contractual relations against Telekenex and Messrs. Prudell, Radford, Summers, Zabit, and Chaney; and (4) violation of the Consumer Protection Act against Telekenex and Messrs. Zabit,

Chaney, Prudell, and Radford. The jury found against Straitshot on its claims for misappropriation of trade secrets and false statements in violation of the Lanham Act. The Court entered a judgment against all defendants.

Following the trial, the court issued additional Findings of Fact and Conclusions of Law awarding Straitshot sanctions for Mr. Summers's spoliation of evidence and failure to produce documents during discovery. Smith Decl. Ex. 10 ("Spoliation FFCL"). In connection with these findings, the Court concluded that Mr. Summers intentionally and wrongfully used a Straitshot laptop and, in bad faith, made substantial alterations and deletions to that laptop in violation of multiple temporary restraining orders. Id. ¶ 24. The Court also found that Straitshot was entitled to sanctions from Telekenex for the spoliation under the doctrine of respondeat superior. Id. ¶ 31.

Sometime after the Straitshot action was filed, Telekenex submitted an insurance claim to Axis. The Axis policy provides coverage for claims against directors and officers (a.k.a., "D&O liability"), employment practices liability, fiduciary liability, and outside executive liability, among other things. ECF No. 39 Ex. 1 ("Policy") § I. The Policy carves out a number of exclusions, including an "Unlawful Advantage Exclusion" for losses

> based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving: the gaining of any profit, remuneration, or advantage to which the Insured was not legally entitled . . . if evidenced by any judgment, final adjudication, alternate dispute resolution proceeding or a document or written statement by an Insured.

Id. § IV.A.5. Axis agreed to accept the duty to defend under the

3

Policy and retained the law firm of Littler Mendelson to defend Telekenex and the individual defendants in the Straitshot action.

### B. Procedural History

On June 8, 2012, Axis filed the instant action against Telekenex, Straitshot, IXC Holdings, Inc., Mr. Zabit, Ms. Salazar, and Brandon and Deanna Chaney (collectively, the "responding Defendants"), as well as the Defendants in default.  Through this action, Telekenex seeks a declaration that the Policy does not cover the damages awarded in the Straitshot action or the defense costs incurred in that action.  Axis's FAC asserts eight counts, seven of which are relevant here: (I) Declaratory Relief - Unlawful Advantage Exclusion; (II) Declaratory Relief - Insurance Code § 533; (III) No Coverage for Spoliation Penalties; (IV) Declaratory Relief - No Coverage for Breach of Duty of Loyalty; (VI) Declaratory Relief - Allocation for Uncovered Amounts; (VII) Equitable Indemnity; and (VIII) Reimbursement.  Defendants in default did not respond to the complaint.

Later in 2012, Axis moved for partial summary judgment against all defendants.  As to the responding Defendants, the motion was granted in part and denied in part.  The Court found that the Policy's unlawful advantage exclusion barred coverage for the $6.49 million judgment in the Straitshot action, but did not bar coverage for the spoliation sanctions.  ECF No. 68 ("SJ Order") at 27.  The Court also found that California Insurance Code section 533 precluded coverage for damages flowing from Straitshot's claims for interference with contractual relations, but not for damages flowing from the spoliation sanctions.  Id.

The Court denied the motion with respect to the Defendants in

default.  Id. at 2 n.1.  The Court reasoned that default had already been entered against the Radfords and the Summerses, and the Prudells were served well after Axis moved for summary judgment.  Id.  The Court stated: "If Axis wishes the Court to enter judgment against the Radfords and the Summerses, then it should move for default judgment.  If it wishes for a judgment against the Prudells, then it should provide them with adequate time to respond."  Id.  About a month after the order was filed, the Clerk entered default against the Prudells.  ECF No. 76.

Defendants in default have yet to appear in this action.  Axis now moves for entry of default judgment against all six of them.

### III. LEGAL STANDARD

After entry of a default, the Court may enter a default judgment.  Fed. R. Civ. P. 55(b)(2).  Its decision whether to do so, while discretionary, is guided by several factors.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  As a preliminary matter, the Court must "assess the adequacy of the service of process on the party against whom default is requested."  Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters, No. 00-0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).  The Court should also determine whether the exercise of personal jurisdiction is appropriate.  In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).

If the Court determines that service was sufficient and the exercise of personal jurisdiction is proper, it should consider whether the following factors support the entry of default judgment: (1) the possibility of prejudice to the plaintiff; (2)

5

1  the merits of plaintiff's substantive claim; (3) the sufficiency of
2  the complaint; (4) the sum of money at stake in the action; (5) the
3  possibility of a dispute concerning material facts; (6) whether the
4  default was due to excusable neglect; and (7) the strong policy
5  underlying the Federal Rules of Civil Procedure favoring decisions
6  on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.
7  1986).

8  "The general rule of law is that upon default the factual
9  allegations of the complaint, except those relating to the amount
10 of damages, will be taken as true."  Geddes v. United Fin. Grp.,
11 559 F.2d 557, 560 (9th Cir. 1977).  "However, necessary facts not
12 contained in the pleadings, and claims which are legally
13 insufficient, are not established by default."  Cripps v. Life Ins.
14 Co., 980 F.2d 1261, 1267 (9th Cir. 1992).

**IV.  DISCUSSION**

   **A.  Service of Process**

As an initial matter, the Court finds that service of process on Defendants in default was sufficient.  The Radfords were served by mail on June 27, 2012, and subsequently returned a waiver of service of summons.  ECF Nos. 13, 14.  The Summerses also signed and returned written waivers after receiving copies of Axis's original complaint and FAC.  ECF Nos. 16, 17.  Accordingly, the Radfords and Summerses were properly served pursuant to Federal Rule of Civil Procedure 4(d)(4).  Mrs. Prudell was personally served on December 1, 2012.  ECF No. 67.  Mr. Prudell was properly served on December 3, 2012, by leaving a copy of the summons and complaint at his usual dwelling with his wife.  ECF No. 66, Fed R.

Civ. P. 4(e)(2)(B).

### B. Personal Jurisdiction

"When a court is considering whether to enter a default judgment, it may dismiss an action sua sponte for lack of personal jurisdiction." Tuli, 172 F.3d at 712. As this Court sits in California and all six Defendants in default reside in Washington, FAC ¶¶ 6-8, the Court requested supplemental briefing on the issue of personal jurisdiction. Having reviewed Axis's briefing, the Court is satisfied that the exercise of personal jurisdiction is proper.

The Radfords and Prudells have expressly consented to the Court's exercise of personal jurisdiction. These four defendants entered into a settlement agreement with Axis whereby they agreed "that the Court . . . has power to enter default judgment against them on Axis's [FAC] therein, and submit to th[e] Court exercising personal jurisdiction over them accordingly." ECF No. 138-1 ("Smith Decl.") Ex. A § 3, Ex. B § 3. "Because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 n.14 (1985). The Court finds the Radfords and Prudells have waived the personal jurisdiction requirement through their agreements with Axis.

The Court also finds that the exercise of personal jurisdiction over Mr. Summers is appropriate because he purposely availed himself of the privilege of conducting activities in California, and this suit arises out Mr. Summers's contacts with California. Id. at 475. As an employee of Telekenex, a San

7

1  Francisco-based company, Mr. Summers frequently worked in
2  California. Mr. Summers's trial testimony indicates that, though
3  he lived in Washington, he often stayed in San Francisco during the
4  work week, and that his company laptop generally stayed in
5  California. Smith Decl. Ex. C. Moreover, the underlying
6  Straitshot action, as well as the instant insurance coverage
7  dispute, arose, at least in part, out of Mr. Summers's employment
8  with Telekenex in California, and his attempts to siphon business
9  to Telekenex. Finally, Mr. Summers has yet to present a compelling
10 case that the exercise of jurisdiction would be unreasonable.
11     This leaves Mrs. Summers, another resident of Washington.
12 Axis argues that Mr. Summers' forum contacts are attributable to
13 Mrs. Summers as a matter of agency and marital community law.
14 Dated Washington law tends to support this assertion. See Barer v.
15 Goldberg, 20 Wash. App. 472, 481 (Wash. Ct. App. 1978) (holding
16 "that the transaction by the husband as manager of the community,
17 is all that is necessary to subject the wife to jurisdiction,
18 particularly where she had knowledge of the transaction."). In any
19 event, Mrs. Summers has yet to contest the Court's exercise of
20 personal jurisdiction.
21     For these reasons, the Court finds that the exercise of
22 personal jurisdiction is proper.
23     **C.  Eitel Factors**
24     Since service of process and the exercise of personal
25 jurisdiction are proper, the Court next turns to the Eitel factors
26 to determine whether default judgment is appropriate. The Court
27 finds that the Eitel factors favor default judgment here.
28 ///

### i. Possibility of Prejudice

The first factor considers the possibility of prejudice against the plaintiff if default judgment is not entered. The Court finds that because Axis may be without recourse for recovery if default judgment is not entered, this factor weighs in favor of default judgment. See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

### ii. The Merits of Axis's Claims

The second and third Eitel factors require that a plaintiff's allegations state a claim upon which it can recover. With respect to Count I and II, the Court has already held that Policy's unlawful advantage exclusion and California Insurance Code section 533 bar coverage for the $6.49 million judgment in the Straitshot action. SJ Order at 13-14, 24.

As to Count III, the Court previously held that the section 533 did not preclude coverage as to Telekenex for spoliation sanctions. The Court reasoned that the statute does not bar indemnification for a principal where it is held vicariously liable for the willful acts of its agents, and the court in the Straitshot action only held Telekenex liable for spoliation sanctions on the basis of vicarious liability. Id. at 22-24. Axis now asserts a new argument on the spoliation sanctions, contending that fines or penalties do not constitute a covered "loss" as defined by the Policy. The Court finds this argument sufficient for the purposes of a motion for default judgment.

As to Count IV, the Court finds plausible Axis's allegation that it is not liable for any damages awarded in connection with the defaulting Defendant's breaches of their duty of loyalty. In

9

the Straitshot action, Messrs. Prudell and Summers were held liable for breaches of their duty of loyalty to Straitshot. Their wives were also found liable because the actions were taken to benefit the marital community. However, the Policy only provides coverage for Telekenex employees when they are acting within the scope of their employment. Thus, any actions Messrs. Prudell and Summers took or failed to take on behalf of Straitshot are not covered by the Policy.

Axis also moves for default judgment on Count VI as to all of the defaulting Defendants. Axis could be clearer about exactly what relief it is seeking with respect to this count, but the pleadings suggest that Axis seeks a declaration that any amounts Axis advanced in connection with the defense of the Straitshot action are not covered by the Policy. See FAC ¶¶ 72-73. In light of the findings above, the Court finds the pleadings plausible in this respect.

Finally, Axis moves for summary judgment as to the Summerses on Counts VII and VIII, which essentially seek reimbursement for any defense costs advanced on the Summerses behalf. Since Straitshot's claims were not covered by the Policy, the Court finds reimbursement appropriate.

In sum, the Court finds that the second and third Eitel factors favor default judgment.

### iii. The Amount of Money

As to the fourth Eitel factor, the Court must consider "the amount of money at stake in relation to the seriousness of defendant's conduct." N. Cal. Sheet Metal Workers, 2000 U.S. Dist. LEXIS 19065, at *4-5. "The Court considers Plaintiff's

declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." Truong Giang Corp. v. Twinstar Tea Corp., No. 06-CV-03594, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Axis does not seek monetary relief from the Prudells and the Radfords, and seeks only $39,471.11 against the Summerses. This factor weighs in favor of the entry of default judgment.

### iv. The Remaining Eitel Factors

The Court finds that the remaining Eitel factors also favor entry of default judgment. The material facts of this case are not reasonably likely to be subject to dispute, and there is no support for finding that the defendants' default is due to excusable neglect. All six of the defaulting Defendants were served over a year ago, and all of them have yet to enter an appearance. Moreover, while "[c]ases should be decided upon their merits whenever reasonably possible," Eitel, 782 F.3d at 1472, "Defendant's failure to answer Plaintiff['s] Complaint makes a decision on the merits impractical if not impossible, PepsiCo, 238 F. Supp. 2d at 1177.

### D. Damages

A plaintiff moving for entry of default judgment must prove up its requested damages. Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 501 (C.D. Cal. 2003). Here, Axis has submitted a declaration from one of its assistant vice presidents in support of its requested damage award against the Summerses. The declaration states that Axis paid the Summerses' attorney $39,471.11 in connection with the Straitshot action. The Court finds the declaration sufficient for the purposes of default

11

judgment.

## V. CONCLUSION

For the reasons set forth above, Plaintiff Axis Reinsurance Company's motion for default judgment is GRANTED. The Court shall enter judgment separately.

IT IS SO ORDERED.

Dated: February 19, 2014

_____
UNITED STATES DISTRICT JUDGE